1

2

3

4                  UNITED STATES DISTRICT COURT

5                NORTHERN DISTRICT OF CALIFORNIA

6

7

8  MH PILLARS LTD, et al.,

9            Plaintiffs,                    Case No.  15-cv-1383-PJH

10     v.

11  CAROL REALINI, et al.,                  **ORDER GRANTING MOTIONS TO
                                            DISMISS; ORDER DENYING MOTION
12            Defendants.                   FOR BOND**

13

14

15        The motions of defendants Carol Realini ("Realini"), Rodney Robinson

16  ("Robinson"), Christopher Martin ("Martin"), and Ultralight FS, Inc. f/k/a Obopay, Inc.

17  ("Obopay/Ultralight"), and defendants Omney, Inc. ("Omney") and Accelerated

18  Commerce Solutions, Inc. ("ACS") to dismiss the complaint for failure to state a claim,

19  pursuant to Federal Rule of Civil Procedure 12(b)(6), came on for hearing on January 25,

20  2017.  Also before the court was the motion of defendants Realini, Robinson, and Martin

21  for an order pursuant to Civil L.R. 65.1-1 and California Code of Civil Procedure § 1030,

22  requiring plaintiffs to post a bond to secure any award of costs and attorney's fees.

23        Plaintiffs appeared by their counsel Peter Fredman.  Defendants Realini,

24  Robinson, Martin, and Obopay/Ultralight appeared by their counsel Lee Marshall,

25  Alexandra Whitworth, and Mary Buchanan; and defendants Omney and ACS appeared

26  by their counsel Christopher Karagheuzoff, and Patricia Welch.  Having read the parties'

27  papers and carefully considered their arguments and the relevant legal authority, the

28  court hereby DENIES the motions as follows and for the reasons stated at the hearing.

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

**BACKGROUND**

The complaint in this action was filed on March 25, 2015.  Plaintiffs are MH Pillars Ltd., d/b/a Payza, a United Kingdom corporation, and MH Pillars Inc., a New York corporation.  Cplt ¶ 6.  Plaintiffs allegedly operate "Payza," which is "an internet payment business similar to Paypal."  Cplt ¶ 18.[1]  Defendants are three individuals – Realini, Robinson, and Martin, all of whom allegedly reside in California; two Delaware corporations – Obopay/Ultralight and Omney; and one California corporation – ACS.  Cplt ¶¶ 7-12.

Obopay/Ultralight, which was based in Silicon Valley, also operated a business similar to PayPal, which was focused on mobile payments and banking, with a substantial business and presence in India.  Cplt ¶ 19.  Plaintiffs assert that by 2012, most of Obopay/Ultralight's customers were overseas, and its U.S. business operations "consisted solely of 'renting' its purported U.S. state money transmitter license rights to non-licensed payment processing businesses through agency agreements.  Cplt ¶ 3.  Payza was allegedly one of Obopay/Ultralight's customers.  Cplt ¶ 3.

On April 1, 2012, MH Pillars Inc. entered into an "Agent Agreement" with Obopay/

---

[1]   MH Pillars Ltd. d/b/a Payza, and MH Pillars Inc. are allegedly separate entities.  Cplt ¶ 6.  However, the complaint refers interchangeably to "plaintiff" and to "plaintiffs," not to any specific plaintiff.  See, e.g., Cplt ¶ 13 (both "plaintiffs" and "plaintiff"); ¶¶ 14, 15 ("plaintiff"); ¶ 18 ("plaintiffs"); ¶ 20 ("plaintiff"); ¶¶ 21, 23, 24, 28, 29, 31, 33, 36, 37, 39, 40, 42-48, 50 ("plaintiffs").  The court refers generally to "plaintiffs" in this order, because the complaint does not make a clear distinction.

The complaint appears to assert all causes of action on behalf of both plaintiffs, and describes Payza as "[p]laintiffs' business," but also alleges that MH Pillars Ltd. (but not MH Pillars Inc.) was doing business as Payza.  Cplt ¶¶ 3, 6.  However, while Payza is not a party to the action, plaintiffs' opposition to the motions to dismiss refers to "Payza" as, for example, the party to whom defendants owed fiduciary duties, see Opp. at 7-8; the party that suffered damages as a result of defendants' alleged negligence, see Opp. at 9; the party that was damaged as a result of the alleged breaches of the Stock Agreement and the Options Agreement, see Opp. at 9; the party that was allegedly defrauded, see Opp. at 11-12; the party that entered into the contracts "with . . . defendants[;]" the party that "was induced to enter into these contracts by fraud[;]" the party that received nothing of value for the millions of dollars it paid "defendants[;]" and the party that was denied the benefit of the bargain by "defendants," see Opp. at 13; and the party that "states claims for UCL violations," Opp. at 15.  Plaintiffs appear to be using "Payza" as a catch-all for either "plaintiff" or "plaintiffs," without distinguishing between the two named plaintiffs.

2

1    Ultralight, and at that point began operating in the United States.  See Cplt ¶¶ 19-20 &

2    Exh. A.  Martin – Obopay's "EVP" and "Compliance Officer" – allegedly negotiated and

3    executed the Agent Agreement on behalf of Obopay/Ultralight.  Cplt ¶ 22; Exh. A at 11.

4           Under the Agent Agreement, Obopay/Ultralight agreed to provide money

5    transmission services to plaintiffs in the states where Obopay/Ultralight maintained

6    money transmitter licenses (or "MTLs").  Cplt ¶ 21.  MH Pillars Inc. agreed to pay

7    Obopay/Ultralight a $100,000 fee and $6,500/mo. (with increased fees after the first year)

8    for the rights to conduct electronic money transfers as its agent pursuant to Obopay/

9    Ultralight's MTLs for a three-year term.  Cplt ¶ 21.

10          Plaintiffs allege that shortly after MH Pillars Inc. entered into the Agent Agreement,

11   they learned that Obopay/Ultralight was in financial distress (which Obopay/Ultralight had

12   previously failed to disclose).  Cplt ¶ 23.  They assert that Obopay/Ultralight was in the

13   process of "selling itself or its assets," that its U.S. operations would be "abandoned"

14   during any resulting restructuring, and that its MTL business was facing serious

15   compliance problems.  Cplt ¶ 23.  They claim that Obopay/Ultralight personnel including

16   Martin "knew or should have known these to be the true facts at the inception of the

17   Agent Agreement" in April 2012 – i.e., that Obopay/Ultralight was having financial

18   problems and "was seeking to sell itself."  Cplt ¶ 23.

19          However, plaintiffs assert, it was not until May 2012 that they first became aware

20   that Obopay/Ultralight was for sale, when Martin approached them as potential buyers of

21   the company.  Cplt ¶ 24.  They contend that they were "an obvious target" as they now

22   relied on the Agent Agreement to operate their U.S. business.  Cplt ¶ 24.  Shortly

23   thereafter, they assert, Obopay/Ultralight "and/or its shareholders" began a transaction to

24   sell Obopay/Ultralight or its assets to an overseas buyer that intended to abandon the

25   U.S. operations and MTLs.  Cplt ¶ 25.  The sale was allegedly completed effective

26   November 11, 2012.  Cplt ¶ 27.

27          Plaintiffs claim that Robinson subsequently approached them with an offer to sell

28   them the MTLs and to continue the U.S. operations.  Cplt ¶ 28.  Robinson allegedly

United States District Court
Northern District of California

3

stated that the new foreign owner of Obopay/Ultralight would transfer the MTLs to them, in exchange for an assumption of up to $500K worth of U.S. liabilities, and allegedly represented that "he could deliver the deal to plaintiffs in exchange for a brokerage fee to his new ACS entity." Cplt ¶ 28. After allegedly obtaining plaintiffs' agreement in principle, Robinson arranged for his attorney to put the deal together. Cplt ¶ 29. Plaintiffs claim that Robinson's proposal was that defendant ACS would purchase Obopay/Ultralight – stripped of its technology and intellectual property – and would resell it to plaintiffs, who would thereby acquire the MTLs by merger with what remained of the Obopay/Ultralight entity. Cplt ¶ 31.

A series of events followed, which appear to have been caused by or related to the fact that existing Obopay/Ultralight MTLs were out of compliance with state regulators, or were "in serious jeopardy" – notably events involving negotiations concerning the attempt to bring the MTLs into compliance with the various state regulators. Cplt ¶¶ 32-38.

On January 31, 2013, the parties executed agreements that Realini and her attorney had allegedly prepared – (a) a "Stock Purchase Agreement" ("Stock Agreement") whereby MH Pillars Ltd. purchased 9% of the stock in Obopay/Ultralight for $1.25 million, and pursuant to which Realini and Obopay/Ultralight allegedly warranted that Obopay/Ultralight had good MTLs and the power to transfer them, see Cplt Exh. B; and (b) an "Option Agreement," between MH Pillars Ltd., Obopay, and Realini, whereby MH Pillars Ltd. paid $400,000 for the option to purchase the remaining 91% of Obopay/ Ultralight for a nominal sum; and pursuant to which Realini and Obopay/Ultralight allegedly warranted that Obopay/Ultralight had good MTLs and the power to transfer them, see Cplt Exh. C.

Plaintiffs assert that the Stock Agreement was executed by Realini on behalf of Obopay/Ultralight, and that the Option Agreement was executed by Realini on behalf of herself and Obopay/Ultralight. See Cplt ¶ 39(a), (b) & Exhs. B and C. Plaintiffs assert that "other transactional documents" included an employment agreement between Realini and Obopay/Ultralight, executed by Robinson as CFO for Obopay/Ultralight; an

4

1   indemnity agreement between Obopay/Ultralight and Realini executed by Robinson as

2   CFO for Obopay/Ultralight; and an indemnity agreement between Obopay/Ultralight and

3   Robinson executed by Realini as CEO for Obopay/Ultralight.  Cplt ¶ 39(c).

4       Also on January 31, 2013, as part of this transaction, "plaintiffs" paid $1.65 million

5   to Obopay/Ultralight and $276,088 to ACS (which money allegedly went to Robinson and

6   Realini).  Cplt ¶¶ 40-41.  In addition, in March 2013, Obopay/Ultralight allegedly

7   requested that "plaintiffs" transfer some $4.1 million to its control for "MTL compliance

8   purposes," which plaintiffs claim they did in April 2013.  Cplt ¶¶ 44-45.

9       Plaintiffs assert that approximately two months later, in June 2013, Obopay/

10  Ultralight and Realini sent plaintiffs a letter purporting to rescind the Option Agreement

11  and terminate the Agent Agreement.  Cplt ¶ 47 & Exh. D.  As a result, plaintiffs allege,

12  they could no longer maintain their U.S. operations.  Cplt ¶ 48.  Plaintiffs allege that

13  defendants never tendered nor offered to tender the $400K consideration paid for the

14  Option Agreement, or the $4.1 million that plaintiffs paid in early 2013.  Cplt ¶¶ 49-50.

15  Plaintiffs now claim that defendants owe them $4.5 million directly, and that defendants

16  owe plaintiffs' customers some additional amount.  See, e.g., Cplt ¶¶ 50-51.

17      Plaintiffs allege six causes of action in the complaint – (1) breach of fiduciary duty

18  (against Realini, Robinson, Martin, and ACS); (2) negligence (against all defendants);

19  (3) breach of contract (against Realini, and Obopay/Ultralight; (4) fraud and deceit

20  (against all defendants); (5) rescission and restitution (against all defendants); (6) infair

21  competition under Business & Professions Code § 17200 (against all defendants).

22                          **DISCUSSION**

23  A.   Motions to Dismiss

24       1.    Legal standard

25      A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6)

26  where the pleadings fail to state a claim upon which relief can be granted.  Fed. R. Civ. P.

27  12(b)(6).  The court must "accept factual allegations in the complaint as true and construe

28  the pleadings in the light most favorable to the nonmoving party," Manzarek v. St. Paul

United States District Court
Northern District of California

1    Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008), drawing all "reasonable

2    inferences" from those facts in the nonmoving party's favor, Knievel v. ESPN, 393 F.3d

3    1068, 1080 (9th Cir. 2005).

4        A complaint may be dismissed if it does not allege "enough facts to state a claim to

5    relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

6    "A claim has facial plausibility when the pleaded factual content allows the court to draw

7    the reasonable inference that the defendant is liable for the misconduct alleged."

8    Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, "a complaint [does not] suffice if it

9    tenders naked assertions devoid of further factual enhancement." Id. (quotation marks

10   and brackets omitted). The court need not "assume the truth of legal conclusions merely

11   because they are cast in the form of factual allegations." W. Mining Council v. Watt, 643

12   F.2d 618, 624 (9th Cir. 1981).

13       2.    Motion by defendants Realini, Robinson, Martin, and Obopay/Ultralight

14       Defendants Realini, Robinson, Martin, and Obopay/Ultralight seek an order

15   dismissing all six causes of action alleged in the complaint. Defendants Omney and ACS

16   filed a joinder in the motion, but provided no separate argument.

17       As an initial matter, as explained at the hearing, the court finds the complaint

18   largely incomprehensible, in part because plaintiffs fail to specify which defendant is

19   alleged to have engaged in which behavior with regard to which plaintiff. It is not the

20   court's job or defendants' job to match up the facts with each cause of action and each

21   plaintiff and each defendant. In addition, the court finds that each of the six causes of

22   action fails to state a claim.

23           a.    Breach of fiduciary duty

24       The elements of a cause of action for breach of fiduciary duty are (1) existence of

25   a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by

26   the breach. Stanley v. Richmond, 35 Cal. App. 4th 1070, 1086 (1995). There must be an

27   adequate showing of each of these elements in order to plead a cause of action for

28   breach of fiduciary duty. See Yamauchi v. Cotterman, 84 F.Supp. 3d 993, 1016 (N.D.

United States District Court
Northern District of California

6

1   Cal. 2015); City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 68 Cal. App.

2   4th 445 (1998)).  Plaintiffs bring this claim against Realini, Robinson, Martin, and ACS.

3         Plaintiffs allege that Realini, Robinson, Martin, and ACS "owed fiduciary duties

4   with respect to these matters to act with the highest degree of honesty and loyalty toward

5   [plaintiffs] and in their best interests," on the basis that officers and controlling

6   shareholders owe fiduciary duties to other stockholders, that joint venture partners owe

7   fiduciary duties to each other, and that agents generally owe fiduciary duties to their

8   principals.  See Cplt ¶ 54.  Plaintiffs allege that "[d]efendants breached these fiduciary

9   duties" and that plaintiffs were injured and suffered damages as a result.  Cplt ¶¶ 55, 56.

10        The motion to dismiss the claim of breach of fiduciary duty is GRANTED.  The

11  complaint is impermissibly vague in its generic allegations against all "defendants," and

12  does not plead facts showing that any particular defendant was a fiduciary to either

13  plaintiff or showing a specific basis for such fiduciary relationship.  More importantly, the

14  complaint does not identify a fiduciary duty that was owed by any particular defendant to

15  any particular plaintiff, or plead facts showing the breach of any such fiduciary duty.

16        The dismissal is WITH LEAVE TO AMEND to allege facts sufficient to state a

17  plausible claim as to each of the defendants named in this cause of action – Realini,

18  Robinson, Martin, and ACS.  Plaintiffs must also plead particular facts showing which

19  defendant owed a fiduciary duty to which plaintiff, and under which theory, and must also

20  allege facts showing breach by a particular defendant and facts showing resulting

21  damage.

22              b.    Negligence

23        The elements of a cause of action for negligence under California law are (1) duty;

24  (2) breach; (3) causation; and (4) damages.  Wells Fargo Bank, N.A. v. Renz, 795

25  F.Supp. 2d 898, 924-25 (N.D. Cal. 2011).  Plaintiffs bring this claim against "all

26  defendants."

27        Plaintiffs allege that "[d]efendants owed duties of care to plaintiffs and the public at

28  large to competently maintain Obopay's MTL rights and not unlawfully rent or sell MTL

1   rights or compliance services that they had no legal authority or practical capability to

2   deliver or provide."  Cplt ¶ 59.  They allege that this "tort duty" is imposed by law on "all

3   California MTL licensees (or would-be licensees) in order to implement the fundamental

4   public policies embodied in the state regulatory scheme pertaining to MTL licensing, and

5   is independent of the parallel duties imposed on defendants under the contracts alleged

6   herein."  Cplt ¶ 59.  Additionally, plaintiffs assert, "defendants owed plaintiffs duties of

7   care under conventional <u>Biankanja</u> analysis.  Cplt ¶ 59 (citing <u>Biankanja v. Irving</u>, 49 Cal.

8   2d 647, 650 (1958)).  Plaintiffs allege further that "[d]efendants breached these duties of

9   care" and that "[p]laintiffs were harmed as a result of the breach . . . ."  Cplt ¶¶ 60-61.

10      Plaintiffs assert further that "[e]ach corporate defendant is liable for punitive

11   damages for the acts of its agents because each (a) had advance knowledge of their

12   unfitness, (b) authorized their wrongful conduct beforehand, and/or (c) ratified their

13   wrongful conduct afterwards, as shall be proven at trial.  Cplt ¶ 62.

14      The motion to dismiss the cause of action for negligence is GRANTED.  Plaintiffs

15   have not identified the existence of a legal duty – an essential element of a cause of

16   action for negligence.  Whether this prerequisite has been satisfied in a particular case is

17   a question of law to be resolved by the court.  <u>Avila v. Citrus Cmty. Coll. Dist.</u>, 38 Cal. 4th

18   148, 161 (2006).  As a general rule, persons have a duty to use due care to avoid injury

19   to others, and may be held liable if their careless conduct injures another person.  <u>See</u>

20   <u>Rowland v. Christian </u>69 Cal. 2d 108, 113 (1968); Cal. Civ. Code § 1714.  A duty of care

21   may arise through statute, contract, the general character of the activity, or the

22   relationship between the parties.  <u>The Ratcliff Architects v. Vanir Constr. Mgmt., Inc.</u>, 88

23   Cal. App. 4th 595, 604-05 (2001) (citing <u>J'Aire Corp. v. Gregory</u>, 24 Cal. 3d 799, 803

24   (1979)).

25      Here, plaintiffs have alleged no facts showing that any defendant owed a legal

26   duty of care to any plaintiff, or that any defendant breached any legal duty of care owed

27   to any plaintiff.  Moreover, the assertion that the duty allegedly owed to "the public at

28   large" is "independent of the parallel duties imposed on defendants" under the contracts

United States District Court
Northern District of California

8

1   is meaningless without any supporting facts.

2       In addition, the negligence claim appears to be based on the same conduct as the

3   contract claims, and as such, would constitute an impermissible attempt to convert a

4   breach of contract claim into a tort claim.  See Arnts Contracting Co. v. St. Paul Fire &

5   Marine Ins. Co., 47 Cal. App. 4th 464, 479 (1996).  "A contracting party's unjustified

6   failure or refusal to perform is a breach of contract, and cannot be transmuted into tort

7   liability by claiming that the breach detrimentally affected the promisee's business."  Id.

8   Conduct amounting to a breach of contract is also not tortious unless the conduct

9   "violates an independent duty arising from principles of tort law."  Applied Equip. Corp. v.

10  Litton Saudi Arabia, Ltd., 7 Cal. 4th 503, 514 (1994).

11      The dismissal is WITH LEAVE TO AMEND to allege facts supporting each

12  element of the claim, sufficient to state a plausible claim as to each of the defendants

13  named in this cause of action.  Plaintiffs must also plead facts showing which defendant

14  owed a duty to which plaintiff, and must also allege facts showing a breach of that duty by

15  a particular defendant and facts showing resulting damage.

16                   c.      Breach of contract and breach of the implied covenant

17      The elements of a claim of breach of contract under California law are (1) the

18  existence of a contract, (2) plaintiff's performance or excuse for nonperformance,

19  (3) defendant's breach, and (4) damages to plaintiff as a result of the breach.  Buschman

20  v. Anesthesia Bus. Consultants LLC, 42 F.Supp.3d 1244, 1250 (N.D. Cal. 2014); CDF

21  Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239  (2008).  Plaintiffs assert this

22  cause of action against Realini and Obopay/Ultralight.

23      In the complaint, plaintiffs allege that they entered into the Agent Agreement, the

24  Stock Agreement, and the Option Agreement with "defendants" as shown in Exhibits A-C

25  to the complaint.  Cplt ¶ 64.  They assert that like any contract, these agreements

26  included an implied promise of good faith and fair dealing, not to do anything to unfairly

27  interfere with the right of any other party to receive the benefits of the contract.  Cplt ¶ 64.

28  Plaintiffs assert that "[a]s alleged above, defendants breached the implied and express

9

terms, warranties, and representations of these agreements and the implied covenants of fair dealings therein."  Cplt ¶ 65.

The motion to dismiss the cause of action for breach of contract and breach of the implied covenant is GRANTED.  This case is at heart a breach of contract case. However, the breach of contract claim suffers from the same defect as exists with regard to the complaint as a whole – plaintiffs MH Pillars Ltd. and MH Pillars Inc. have failed to differentiate between themselves (generally referring to themselves collectively as "plaintiffs" or alternatively as "Payza") and have also failed to differentiate among the defendants or to plead facts showing what action any particular defendant took with regard to any particular contract.

According to the Agreements attached as Exhibits A-C to the complaint, MH Pillars Inc. and Obopay/Ultralight were the sole parties to the Agent Agreement; MH Pillars Ltd. and Obopay/Ultralight were the sole parties to the Stock Agreement; and MH Pillars Ltd., Obopay/Ultralight, and Realini were the sole parties to the Option Agreement.  Thus, plaintiffs must allege which Agreement forms the basis of their claim, who the parties to said Agreement were, and who the claim of breach of contract is being asserted by and against.  They also must allege which provisions of which Agreement were breached, and how.

In addition, neither plaintiffs nor defendants have focused in their arguments on the claim of breach of the implied covenant of good faith and fair dealing, and it is not adequately addressed in the complaint.  Every contract possesses an implied covenant of good faith and fair dealing in which "neither party will do anything which will injure the right of the other to receive the benefits of the agreement."  Foley v. Interactive Data Corp., 47 Cal. 3d 654, 684 (1988). The obligations imposed by the implied covenant are not those set out in the terms of the contract, but are obligations governing the manner in which contractual obligations must be discharged.  See Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566, 574 (1973).  The scope of the implied covenant depends on the purposes and express terms of the contract.  Carma Developers, Inc. v. Marathon Dev. Calif., Inc.,

2 Cal. 4th 342, 373 (1992).

To the extent that plaintiffs intend to pursue this claim, they must allege facts sufficient to show that (1) the parties entered into a contract; (2) the plaintiff fulfilled its obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct.  Rosenfeld v. JPMorgan Chase Bank, N.A., 732 F.Supp.2d 952, 968 (N.D. Cal. 2010).

The dismissal is WITH LEAVE TO AMEND.  Plaintiffs must allege facts sufficient support the elements of breach of contract and breach of the implied covenant of good faith and fair dealing, as set forth above.  They must also differentiate between the two plaintiffs and Payza, and must plead facts supporting the elements of the claims as to each defendant and each plaintiff, and must allege which provision(s) of each Agreement was breached.

d.     Fraud and deceit

Under California law, the elements of a claim of fraud are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.  Lovejoy v. AT&T Corp., 92 Cal. App. 4th 85, 93 (2001).  A claim for fraud based on nondisclosure further requires the plaintiff to allege facts showing that the defendant had the duty to disclose the fact to the plaintiff, and that the plaintiff was unaware of the undisclosed fact.  See Rodriquez v. United Airlines, Inc., 5 F.Supp. 3d 1131, 1136 (N.D. Cal. 2013).  Generally, there is no duty to disclose absent a fiduciary relationship.  See Herremans v. BMW of N. Am., LLC, 2014 WL 5017843 at *5 (C.D. Cal. Oct. 3, 2014).

In addition, in federal court, a party alleging fraud is required to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The complaint must include "particularized allegations of the circumstances constituting fraud,

11

1   including identifying the statements at issue and setting forth what is false or misleading

2   about the statement[s] and why the statements were false or misleading at the time they

3   were made." In re Rigel Pharms., Inc. Sec. Litig., 697 F.3d 869, 876 (9th Cir. 2012); see

4   also Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106-07 (9th Cir. 2003).  Plaintiffs

5   assert the claim of fraud and deceit against all defendants.

6          In the complaint, plaintiffs allege that "[d]efendants engaged in deceit in warranting

7   and representing that they had the right and authority to deliver the state MTL rights in

8   the Agent Agreement, Stock Agreement, and Option Agreement." Cplt ¶ 72.  They also

9   claim that "[d]efendants committed corresponding acts of deceit by their words and

10  conduct ancillary to entering into these agreements because the sole intent and purpose

11  of these transactions – and of Obopay's U.S. operations for that matter – was the

12  provision of its MTL rights to entities like plaintiffs." Cplt ¶ 72.  In addition, plaintiffs allege

13  "[o]n information and belief," that

14              [d]efendants also engaged in numerous ancillary acts of
               deceit, failing to disclose prior to the inception of the Agent
15              Agreement (a) that Obopay's U.S. MTL operations were in
               serious financial distress and untenable, (b) that Obopay was
16              contemplating a sale that would terminate its U.S. MTL
               operations, (c) that Obopay's MTLs were out of compliance or
17              in serious jeopardy, and (d) that Obopay lacked the requisite
               liquidity, audited financial statements, technological systems,
18              expertise, and other requirements of MTL compliance.

19  Cplt ¶ 73.

20         Plaintiffs assert that they "reasonably relied" on the "defendants' deceit" and that

21  they would not have entered into any agreement with Obopay in the first instance, would

22  not have pursued the MTL purchase, would not have entered into the acquisition

23  transaction, and would not have transferred the $4.1 million if the "true facts" had been

24  disclosed to them.  Cplt ¶ 74.  As with the negligence claim, plaintiffs add that  "[e]ach

25  corporate defendant is liable for punitive damages for the acts of its agents because each

26  (a) had advance knowledge of their unfitness, (b) authorized their wrongful conduct

27  beforehand, and/or (c) ratified their wrongful conduct afterwards, as shall be proven at

28  trial."  Cplt ¶ 76.

United States District Court
Northern District of California

1    The motion to dismiss the cause of action for fraud and deceit is GRANTED.  First,

2    the complaint fails to allege specific facts showing the circumstances constituting fraud –

3    the "who, what, when, where, and how" of the alleged fraud.  See Vess, 317 F.3d at

4    1106.  For example, with regard to the allegation that "defendants" engaged in deceit "in

5    warranting and representing that they had the right and authority to deliver the state MTL

6    rights in the Agent Agreement, Stock Agreement, and Option Agreement[,]" Cplt ¶ 72,

7    plaintiffs do not plead facts showing that specific defendants "warranted" and

8    "represented" that they had the right to deliver the MTL rights.  Indeed, plaintiffs do not

9    cite to specific portions of any of the three Agreements, and do not explain who these

10   warranties and representations were made to – whether to both plaintiffs, or whether only

11   to the plaintiff that was a party to each of the agreements.

12   With regard to the allegation that "defendants" committed "corresponding acts of

13   deceit by their words and conduct ancillary to entering into those agreements because

14   the sole intent and purpose of these transactions . . . was the provision of its MTL rights

15   to entities like plaintiffs[,]" Cplt ¶ 72, plaintiffs do not specify which defendants committed

16   these acts, and do not plead facts showing "corresponding acts of deceit," or "conduct

17   ancillary to entering into those agreements" – and do not explain what they mean by

18   those phrases or what they mean by "the provision of MTL rights to entities like plaintiffs."

19   With regard to the allegation "on information and belief" that "defendants" also

20   "engaged in numerous acts of deceit," including "failing to disclose" prior to the inception

21   of the Agent Agreement that Obopay's U.S. operations were in financial difficulty, that

22   Obopay was contemplating a sale that would terminate its U.S. MTL operations, that

23   Obopay's MTLs were out of compliance, and that Obopay lacked the requisite liquidity,

24   Cplt ¶ 73, plaintiffs do not plead facts showing who was deceived – the parties to the

25   Agent Agreement were MH Pillars Inc. and Obopay – and do not specify who committed

26   the fraud and whether that person or entity had a duty to disclose the allegedly omitted

27   information.

28   Second, the entire claim is asserted against "all defendants," but there are no facts

13

pled showing the role of each defendant in the alleged fraud.  There is no absolute

requirement that where several defendants are sued in connection with an alleged

fraudulent scheme, the complaint must identify the false or misleading statements made

by each and every defendant.  Nevertheless, Rule 9(b) does not allow a complaint to

merely lump multiple defendants together but "require[s] plaintiffs to differentiate their

allegations when suing more than one defendant . . . and inform each defendant

separately of the allegations surrounding his alleged participation in the fraud." Swartz v.

KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007).  That is, "[i]n the context of a fraud suit

involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each]

defendant[ ] in the alleged fraudulent scheme.'" Id. at 765 (citation omitted).  Allegations

that "everyone did everything" are insufficient. Destfino v. Reiswig, 630 F.3d 952, 958

(9th Cir. 2011).

Here, to the extent that any of the factual allegations might support a claim of

fraud, they are not identified as such, and the cause of action itself does not plead

specific facts.  It should not be left to the defendants to wonder which facts plaintiffs

believe support their fraud claim, and it should not be left for the court to attempt to match

up the facts (many vaguely or imprecisely pled) from a lengthy section of the complaint to

the various causes of action.

Finally, as for the "conspiracy" allegations, the complaint does not plead the

elements of civil conspiracy, and the boilerplate "alter-ego" allegations in ¶¶ 14-15 are

insufficient to transform this deficiently-pled claim into a claim of conspiracy to commit

fraud.

e.      Rescission and restitution

Plaintiffs allege a claim of rescission and restitution, pursuant to California Civil

Code § 1689(b).  This claim is asserted against all defendants.  Under § 1689, a contract

may be rescinded if all the parties consent.  Cal. Civ. Code § 1689(a).  Apart from that,

there are several legal theories under which a contract may be rescinded.  See Cal. Civ.

Code § 1689(b).

14

1    The complaint refers to three of these theories.  See Cplt ¶ 78 (citing Cal. Civ.

2    Code § 1689(b)(1), (2), (4).  Plaintiffs also assert that upon rescission or partial

3    rescission, the "aggrieved party shall be awarded complete relief, including restitution of

4    benefits, if any, conferred by him as a result of the transaction and any consequential

5    damages to which he is entitled."  Cplt ¶ 79 (citing Cal. Civ. Code § 1692).  However,

6    plaintiffs do not specify the basis of their rescission claim.  They simply assert that

7    "[p]laintiffs are entitled to rescission, restitution, and consequential damages based on

8    the facts alleged above."  Cplt ¶ 80.

9    The motion to dismiss the cause of action for rescission/restitution is GRANTED.

10   Plaintiffs have alleged no facts in this cause of action, apart from a vague reference to

11   "the facts alleged above."  Moreover, the complaint does not identify the legal theory

12   under which plaintiffs seek rescission – although plaintiffs suggest in the opposition that it

13   is § 1689(b)(1) – "mistake."  It also appears that this cause of action may be premised on

14   the fraud claim – though it is impossible to tell.

15   Apart from this, however, this cause of action must be dismissed because in

16   California, rescission is a remedy, not a cause of action.  See Camofi Master LDC v.

17   Assoc. Third Party Admins., 2016 WL 6834585 at *3 (N.D. Cal. Nov. 21, 2016); Nakash

18   v. Superior Court, 196 Cal. App. 3d 59, 70 (1987)).  Similarly, restitution is not a stand-

19   alone cause of action in California.  See, e.g., Durell v. Sharp Healthcare, 183 Cal. App.

20   4th 1350, 1370 (2010).  Restitution can be sought as a remedy in a quasi-contract cause

21   of action, see, e.g., Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015),

22   but plaintiff has not asserted a claim of quasi-contract here.

23   Both rescission and restitution may arguably be available remedies here,

24   depending on whether plaintiffs prevail and on which causes of action, but neither is a

25   stand-alone cause of action, and joining them together does not solve the problem.

26   Thus, the dismissal of this cause of action is WITH PREJUDICE.

27          f.      Unfair competition

28   Business & Professions Code § 17200 ("UCL") prohibits any "business act or

United States District Court
Northern District of California

15

practice" that is "unlawful, unfair, or fraudulent."  Cal. Bus. & Prof. Code § 17200.  The

UCL's purpose is to protect both consumers and competitors by promoting fair

competition in commercial markets for goods and services.  Barquis v. Merchants

Collection Assn., 7 Cal. 3d 94, 110 (1972).  A business act or practice must meet only

one of these three criteria – unlawful, unfair, or fraudulent – to constitute a violation of the

UCL.  See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180

(1999).

Plaintiffs assert the UCL claim against "all defendants."  They allege that

"[d]efendants engaged in unlawful, unfair, and fraudulent business acts and practices."

Cplt ¶ 83.  They assert that "[t]he acts and practices were fraudulent for the reasons

stated in the claim for common law deceit[;]" that "[t]he acts and practices were unlawful

because defendants were essentially engaged in the business of unlawfully 'renting' and

'selling' MTL rights[;]" and that "[t]he acts and practices were unfair because they retained

the money without providing the rights or services promised."  Cplt ¶ 83.

The motion to dismiss the UCL claim is GRANTED.  There are two main problems

with this cause of action.  First, it is not clear whether plaintiffs can state a claim, as there

are no facts alleging that any defendant is a competitor of plaintiff MH Pillars Ltd. or

plaintiff MH Pillars Inc.  This case involves a dispute between commercial parties over

their economic relationship, which does not give rise to a claim under the UCL.

The UCL was not enacted to protect commercial parties who have a dispute that

revolves around a contractual business relationship.  See Linear Tech. Corp. v. Applied

Materials, Ltd., 152 Cal. App. 4th 115, 135 (2007) (quoting Kasky v. Nike Inc., 27 Cal. 4th

939, 949 (2002)).  Where a dispute is based on contracts not involving either the general

public or individual consumers who are parties to the contract, a corporate plaintiff may

not seek relief under the UCL.  See id.  The individual defendants in this case cannot be

considered competitors.  The question is whether any of the corporate defendants is a

competitor, and whether that competition forms the basis of the parties' dispute.

As pled, plaintiffs' § 17200 claim "lacks any connection to the protection of fair

16

United States District Court
Northern District of California

competition or the general public," see Sacramento E.D.M., Inc. v. Hynes Aviation Indus., Inc., 965 F.Supp. 2d 1141, 1155 (E.D. Cal. 2013), and instead centers on conduct that occurred in the context of sophisticated and unique commercial transactions between the parties.  For example, plaintiffs allege that under the Agent Agreement, "[p]laintiffs" paid Obopay a fee for the rights to conduct electronic money transfers under Obopay's money transmitter license.  Cplt ¶ 21.  Subsequently, "the parties" also entered into the Stock Agreement and the Option Agreement, as well as various employment and indemnity agreements.  Cplt ¶ 39.

The second problem is that plaintiffs have not adequately pled facts showing what the alleged "unlawful," "unfair" and "fraudulent" business acts and practices were.  With respect to the "unlawful" variety of unfair competition, "the UCL permits violations of other laws to be treated as unfair competition that is independently actionable."  Kasky, 27 Cal. 4th at 949.  Virtually any law, be it federal, state, or local, can serve as a predicate for an action under the UCL.  Durell, 183 Cal. App. 4th at 1361.  Here, however, plaintiffs do not allege that defendants violated any law.  The basis of the "unlawful" business acts and practices is plaintiffs' claim that "defendants" were "essentially engaged in the business of unlawfully 'renting' and 'selling' MTL rights."  Cplt ¶ 83.  Plaintiffs have not specified what law this violated, and thus, have not stated a claim for "unlawful" business acts and practices.

With respect to the "unfair" variety of unfair competition, a plaintiff may plead that defendants' conduct is "unfair" within the meaning of the several standards developed by the courts.  Lozano v. AT & T Wireless Servs., Inc., 504 F.3d 718, 736 (9th Cir. 2007) (requiring, in consumer cases, "unfairness be tied to a 'legislatively declared' policy" or that the harm to consumers outweighs the utility of the challenged conduct); Cel-Tech., 20 Cal. 4th at 186-87 (finding of unfairness must be "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition"); see also Camacho v. Auto. Club of So. Cal., 142 Cal. App. 4th 1394, 1403 (2006); McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457, 1473 (2006).

17

United States District Court
Northern District of California

1   Here, plaintiffs allege that the "acts and practices" were unfair because defendants

2   "retained the money without providing the rights or services promised." Cplt ¶ 83. That is

3   nothing more than a claim of breach of contract. Plaintiffs have alleged no injury to

4   consumers, and no harm to competition, and thus, the complaint fails to state a claim for

5   "unfair" business acts and practices.

6   Finally, a plaintiff may challenge "fraudulent" conduct by showing that "members of

7   the public are likely to be deceived" by the challenged business acts or practices. In re

8   Tobacco II Cases, 46 Cal. 4th 298, 312 (2009). Here, plaintiffs allege that the acts and

9   practices were fraudulent "for the reasons stated in the claim for common law deceit."

10  Cplt ¶ 83. Notwithstanding that courts have concluded that a claim for "fraudulent"

11  business acts and practices under the UCL is distinct from a claim of common law fraud,

12  see, e.g., Daugherty v. Am. Honda Motor Co., Inc., 144 Cal. App. 4th 824, 838 (2006),

13  plaintiffs' position is that the "acts and practices" were fraudulent for the exact same

14  reasons alleged in the fraud claim. Under that theory, a "fraudulent" UCL claim would be

15  redundant. Moreover, as discussed above, plaintiff has failed to plead fraud with

16  particularity. Thus, the complaint also fails to state a claim for fraudulent business

17  practices.

18  In addition, as a whole, the complaint does not specify the conduct is the predicate

19  for the UCL claim, and it does not distinguish between each of the defendants or describe

20  what role each defendant is alleged to have played in the alleged UCL violation. See

21  Fortaleza v. PNC Fin. Servs. Grp. Inc., 642 F. Supp. 2d 1012, 1019-20 (N.D. Cal. 2009)

22  (dismissing UCL claim that generally alleged claims against "all defendants").

23  Although the court is not confident that plaintiffs can satisfactorily allege a claim

24  under § 17200, the court dismisses this claim WITH LEAVE TO AMEND, to give plaintiffs

25  an opportunity to attempt to plead facts sufficient to state a plausible claim, in view of the

26  standards set forth above.

27      3.      Motion by Omney and ACS

28  Omney and ACS argue that the complaint does not allege facts sufficient to state a

18

1  claim against them.  The second (negligence), fourth (fraud and deceit), and sixth (unfair

2  competition) causes of action are asserted against both ACS and Omney, and the first

3  (breach of fiduciary duty) cause of action is asserted only against ACS.

4  Plaintiffs contend that the complaint sufficiently alleges liability against these two

5  defendants.  They argue ACS's liability derives from its alter-ego relationship with

6  Robinson, such that it is impossible to distinguish their respective roles in these matters,

7  and is also fair to hold them liable for each other's conduct.  They assert that whether a

8  party is liable under an alter ego theory is normally a question of fact (although, as

9  explained below, they do not allege facts sufficient to support this theory).

10  As for Omney, plaintiffs assert in their opposition to defendants' motions that the

11  company was incorporated "by Robinson" in October 2013.  Plaintiff states that Omney

12  was named as a defendant because "it appeared (and is alleged) to be the alter-ego

13  and/or successor of Obopay and/or ACS."   Plaintiffs add, "[f]or example," that all three

14  entities were located at the same location (the 1804 N. Shoreline Drive address), and

15  Robinson was the agent for service of process for each of them.  Further, plaintiffs

16  contend, the Obopay entity (Ultralight FS Inc.) briefly changed its name to "Omney Inc."

17  in September 2013, just before Robinson incorporated a new Omney Inc. entity (citing

18  id.).  Plaintiffs conclude that on this basis, "it is reasonable to infer that the assets of

19  Obopay – including the $1 million bank accounted [sic] – may by now be housed within

20  Omney."

21  Finally, plaintiffs contend that on June 11, 2015, Omney and ACS filed a statement

22  that disclosed that ACS was then a wholly-owned subsidiary of Omney, which was then a

23  wholly-owned subsidiary of MasterCard International Inc.  Plaintiffs are referring to the

24  "Statement of Interested Entities" filed in this court by Omney and ACS on June 11, 2015.

25  Plaintiffs appear to be saying that they did not know any of this prior to filing the

26  complaint on March 25, 2015.

27  The motion to dismiss is GRANTED.  The complaint does not allege facts

28  sufficient to state a claim against ACS or Omney.  In particular, the complaint does not

United States District Court
Northern District of California

19

1    allege facts sufficient to show liability under the alter ego doctrine. "The alter ego

2    doctrine arises when a plaintiff comes into court claiming that an opposing party is using

3    the corporate form unjustly and in derogation of the plaintiff's interests." Mesler v. Bragg

4    Mgmt. Co., 39 Cal. 3d 290, 300 (1985). The doctrine allows "the court [to] disregard the

5    corporate entity and [to] hold the individual shareholders liable for the actions of the

6    corporation" when it would be just to do so. Id.

7         To survive a motion to dismiss, a plaintiff asserting application of the alter ego

8    doctrine must "allege specifically both of the elements of alter ego liability, as well as

9    facts supporting each." Sandoval v. Ali, 34 F.Supp. 3d 1031, 1040 (N.D. Cal. 2014); see

10   also Neilson v. Union Bank of Cal., N.A., 290 F.Supp. 2d 1101, 1116 (C.D. Cal. 2003)).

11        The first of these two elements is that "there must be such a unity of interest and

12   ownership between the corporation and its equitable owner that the separate

13   personalities of the corporation and the shareholder do not in reality exist." Sonora

14   Diamond Corp. v. Super. Ct. of Tuolumne Cnty., 83 Cal. App. 4th 523, 538 (2000). To

15   successfully plead this element, the plaintiff must also allege ownership. SEC v. Hickey,

16   322 F.3d 1123, 1128 (9th Cir. 2003). Other factors relevant to the first element are "the

17   commingling of funds and other assets of the entities, the holding out by one entity that it

18   is liable for the debts of the other, identical ownership of the entities, use of the same

19   offices and employees, use of one as a mere shell or conduit for the affairs of the other,

20   inadequate capitalization, disregard of corporate formalities, lack of segregation of

21   corporate records, and identical directors and officers." Sandoval, 34 F.Supp. 3d at 1040

22   (citations omitted); see also Tomaselli v. Transamerica Ins. Co., 25 Cal. App. 4th 1269,

23   1285 n.13 (1994).

24        Here, plaintiffs have alleged no facts sufficient to show a unity of interest. They

25   allege that Obopay, Omney, and ACS had the same business address and the same

26   agent for service of process (defendant Robinson). They also appear to be suggesting

27   that there was an identity of ownership. However, each of these defendants was or is a

28   separate corporate entity, and plaintiffs have alleged no facts relating to corporate

United States District Court
Northern District of California

formalities or to stock ownership, no facts relating to whether the corporations were adequately capitalized, and no facts relating to whether the assets were commingled.

Despite the many ways available to plead unity of interest, plaintiffs provide nothing more than naked assertions, on "information and belief," that

> each of the defendants and each of defendants' representatives . . . was the agent, principle [sic], servant, master, employee, employer, joint-venturer, partner, successor-in-interest, and/or co-conspirator of each other defendant and was at all said times acting in the full course and scope of said agency, service, employment, joint venture, concert of action, partnership, successorship, or conspiracy, and that each defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this complaint.

Cplt ¶ 14.

In addition, plaintiffs allege further on "information and belief" that

> each individual defendant is directly and personally liable for the acts of each other defendant notwithstanding any intervening corporate structures because each was the alter-ego of the other and all acted as a single enterprise with respect to these matters or received pecuniary benefits described herein through fraudulent transfers. In the interest of justice, and to prevent abuse of the corporate privilege, judgment must enter against each and all of them with respect to the matters alleged herein.

Cplt ¶ 15.

This sort of boilerplate pleading is insufficient to allege alter ego liability, and conclusory legal assertions are insufficient to meet the test of plausibility set out in Twombly and Iqbal. Plaintiffs have not even recited the factors the court must consider in determining whether there is a plausible allegation of an alter ego relationship.

Plaintiffs contend that ACS's liability is shown by the allegations in ¶¶ 10-12, 14-15, 28, 31, 41, 43 of the complaint. The court does not agree. Paragraphs 10-11 do not mention ACS, and allege only that Robinson was the registered agent for service of process of Obopay/Ultralight and Omney – at their principal place of business at 1804 N. Shorline Blvd., Suite 230, in Mountain View. Cplt ¶¶ 10-11. Paragraph 12 alleges that Robinson was also ACS's agent for service of process, at the same address. Cplt ¶ 12.

1   Paragraphs 14 and 15 contain the boilerplate recitations set forth above, asserting that

2   "each defendant" was the agent of each other defendant.  Cplt ¶ 12.

3        Paragraph 28 alleges that Robinson was a Silicon Valley Obopay VP, and that he

4   "approached plaintiffs" with an offer to sell them the MTLs, and that he also represented

5   that he could "deliver the deal to plaintiffs in exchange for a brokerage fee to his new

6   ACS entity."  Cplt ¶ 28.  Paragraph 31 alleges that Robinson "proposed structures where

7   ACS would purchase Obopay and resell it to plaintiffs, who would thereby acquire

8   Obopay's MTLs by merger with the residual Obopay entity," and that he and ACS would

9   perform Obopay U.S. operations (MTL compliance support) pursuant to a commercial

10  services agreement.  ACS "would receive a payment processing Agent Agreement . . .

11  with the new merged entity for the purpose of engaging in a corporate disbursement

12  business of its own."  Realini would serve as the CEO of Obopay and receive a

13  percentage ownership of ACS.  Cplt ¶ 31.

14       Paragraph 41 alleges that on January 31, 2013, Obopay "wired $276,088 to ACS"

15  and that, "[o]n information and belief," the ACS money "went to" Robinson and Realini.

16  Cplt ¶ 41.  Paragraph 43 alleges that "[d]uring this period, plaintiffs directly paid Obopay's

17  net operating expenses in anticipation of exercising their Option Agreement[;]" and that

18  "monthly invoices were sent to plaintiffs from the Obopay/ACS office" at 1804 N.

19  Shoreline Blvd., Suite 230, in Mountain View.  Among the invoices was (allegedly) one for

20  $5000/mo. for "bookkeeping/admin," which, plaintiffs allege "on information and belief,

21  went to Robinson/ACS, who had issued the invoices."  Cplt ¶ 43.

22       The second element of alter ego liability is that "there must be an inequitable result

23  if the acts in question are treated as those of the corporation alone."  Sonora, 83 Cal.

24  App. 3d at 538.  That is, plaintiffs must allege facts showing that an inequitable result will

25  occur if the corporate entities and the individuals are not treated as one, as well as "some

26  conduct amounting to bad faith."  Leek v. Cooper, 194 Cal. App. 4th 399, 418 (2011).

27       In addition, the plaintiff must plead an inequitable result for each claim asserted in

28  the complaint.  See, e.g., Pac. Mar. Freight, Inc. v. Foster, 2010 WL 3339432 at * 7 (S.D.

United States District Court
Northern District of California

1    Cal. Aug. 24, 2010).  That is, for each claim, the plaintiff must allege facts showing why

2    permitting an individual and a corporation (or two corporations) to "maintain their

3    separate corporate existenc[s]" would result in inequity.  See Payoda, Inc. v. Photon

4    Infotech, Inc., 2015 WL 4593911 at *4 (N.D. Cal. July 30, 2015)).

5        The complaint does not plead facts showing either a potential inequitable result or

6    bad faith.  While it is true that Federal Rule of Civil Procedure 8 does not require "detailed

7    factual allegations," the Supreme Court has unambiguously held that "[a] claim has facial

8    plausibility when the plaintiff pleads factual content that allows the court to draw the

9    reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556

10   U.S. at 678 (emphasis added).  Proper pleading "demands more than an unadorned . . .

11   accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the

12   elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked

13   assertions devoid of further factual enhancement."  Id. (citations, brackets, and quotation

14   marks omitted).

15       Neither the complaint as a whole nor ¶¶ 14-15 in particular contain any "factual

16   enhancements," and the allegations appear to be nothing more than a recitation of

17   various factors that courts have used in applying the alter ego doctrine.  In short, the

18   complaint is deficient because it contains primarily conclusory allegations that merely

19   recite the factors considered by courts when evaluating alter ego claims; it does not

20   specify which corporate defendant is the alter ego of which other corporate entity and/or

21   which individual defendant is the alter ego of which corporate defendant; and it does not

22   allege facts showing what each individual defendant did that would justify piercing the

23   corporate veil.

24       The motion is GRANTED, for the reasons stated above with regard to the motion

25   brought by Realini, Robinson, Martin, and Obopay/Ultralight.  In addition, the court finds

26   that the complaint alleges no basis for liability against Omney and ACS.  Although the

27   court finds it unlikely that plaintiffs will be able to state a claim against Omney and ACS,

28   the court dismisses the claims against these defendants WITH LEAVE TO AMEND.

United States District Court
Northern District of California

23

United States District Court
Northern District of California

1  However, as stated at the hearing, if plaintiffs do amend the claims against Omney and

2  ACS, and if defendants again move to dismiss and the court grants the motion, the court

3  will shift costs to defendants.

4  B.      Motion for Bond

5          1.      Legal standard

6          While there is no specific provision in the Federal Rules of Civil Procedure relating

7  to security for costs, federal district courts have inherent power to require plaintiffs to post

8  security for costs.  Simulnet E. Assocs. v. Ramada Hotel Operating Co., 37 F.3d 573, 574

9  (9th Cir. 1994).  "Typically federal courts, either by rule or by case-to-case determination,

10  follow the forum state's practice with regard to security for costs, as they did prior to the

11  federal rules; this is especially common when a non-resident party is involved."  Id.

12  (quoting 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2nd § 2671).

13          Under California Code of Civil Procedure § 1030, "[w]hen the plaintiff in an action

14  . . . resides out of the state, or is a foreign corporation, the defendant may at any time

15  apply to the court by noticed motion for an order requiring the plaintiff to file an

16  undertaking to secure an award of costs and attorney's fees which may be awarded in

17  the action . . . ."  Cal. Code Civ. Pro. § 1030(a).  The statute requires the defendant to

18  show that there is a "reasonable possibility that the moving defendant will obtain

19  judgment in the action or special proceeding."  Id. § 1030(b).  "The purpose of the statute

20  is to enable a California resident sued by an out-of-state resident 'to secure costs in light

21  of the difficulty of enforcing a judgment for costs against a person who is not within the

22  court's jurisdiction.'"  Alshafie v. Lallande, 171 Cal. App. 4th 421, 428 (2009) (citation

23  omitted).

24          The "reasonable possibility" standard in § 1030(b) is relatively low.  See Circle

25  Click Media LLC v. Regus Mgmt. Grp LLC, 2015 WL 6638929 at *16 (N.D. Cal. Oct. 30,

26  2015) (citation omitted).  Thus, a defendant need not show that there is "no possibility"

27  that plaintiff would win at trial, "but only that it [is] reasonably possible that the defendant

28  will win."  Baltayan v. Estate of Getemyan, 90 Cal. App. 4th 1427, 1432 (2001).

1    However, § 1030 should not be read so broadly "as to require every out-of-state litigant

2    who brings a non-frivolous suit in California to post a bond simply because there is a

3    reasonable chance the defendant may prevail."  Circle Click Media, 2015 WL 6638929 at

4    *16 (citation omitted).

5          Federal courts in California have held that in applying § 1030, a court must

6    consider "'(i) the degree of probability/ improbability of success on the merits, and the

7    background and purpose of the suit; (ii) the reasonable extent of the security to be

8    posted, if any, viewed from the defendant's perspective; and (iii) the reasonable extent of

9    the security to be posted, if any, viewed from the nondomiciliary plaintiff's perspective."

10   Simulnet, 37 F.3d at 573 (citations omitted); see also Gabriel Techs. Corp. v. Qualcomm

11   Inc., 2010 WL 3718848 (S.D. Cal. Sept. 20, 2010).

12         2.      Defendants' motion

13         Defendants argue that the plaintiffs "must" be required to post a bond because

14   they are foreign corporations, and defendants are "likely" to obtain judgment in their

15   favor.  Defendants make three main arguments – that plaintiffs are not incorporated in

16   California, that there is a "reasonable possibility" that defendants will obtain judgment in

17   this action, and that defendants have incurred (and will continue to incur) significant costs

18   and fees that plaintiffs may not be able to pay.

19         The motion is DENIED.  Defendants have not met their burden of showing that

20   they are likely to obtain judgment in the six causes of action, or that the extent of the

21   security they request to be posted is reasonable, from any perspective.  Moreover, they

22   have shown no basis for at least two of the three individual defendants to seek to recover

23   fees and costs.

24         The only true statutory claim alleged is the sixth cause of action under § 17200.

25   The UCL does not provide for attorney's fees, and relief is generally limited to injunctive

26   relief and restitution.  See Cel-Tech, 20 Cal. 4th at 179.  The UCL contains no provision

27   for recovery of fees and costs by a prevailing defendant, although a prevailing defendant

28   may recover for work done on claims other than a UCL claim if there are other claims

United States District Court
Northern District of California

asserted which authorize attorney's fees awards.  See <u>Davis v. Ford Motor Credit Co.</u>,

179 Cal. App. 4th 581, 600 (2009).  However, there is no other statutory claim with an

attorney's fees provision pled in the complaint.

While fees might be authorized pursuant to a contract, the breach of contract claim

is asserted only against Realini and Ultralight/Obopay, in connection with the Option

Agreement.  Thus, at a minimum, Robinson and Martin would have no basis upon which

to seek attorney's fees.

**CONCLUSION**

In accordance with the foregoing, the motions to dismiss are GRANTED, and the

motion for a bond is DENIED.

Any amended complaint shall be filed no later than March 30, 2017.  No new

causes of action or parties may be added to the amended complaint unless plaintiffs first

obtain leave of court.

**IT IS SO ORDERED.**

Dated:  March 3, 2017

_____
PHYLLIS J. HAMILTON
United States District Judge