UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MH PILLARS LTD, et al.,

        Plaintiffs,

    v.

CAROL REALINI, et al.,

        Defendants.

Case No.  15-cv-1383-PJH

**AMENDED ORDER GRANTING MOTIONS TO DISMISS; ORDER DENYING MOTION FOR BOND[1]**

      The motions of defendants Carol Realini ("Realini"), Rodney Robinson ("Robinson"), Christopher Martin ("Martin"), and Ultralight FS, Inc. f/k/a Obopay, Inc. ("Obopay/Ultralight"), and defendants Omney, Inc. ("Omney") and Accelerated Commerce Solutions, Inc. ("ACS") to dismiss the complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), came on for hearing on January 25, 2017.  Also before the court was the motion of defendants Realini, Robinson, and Martin for an order pursuant to Civil L.R. 65.1-1 and California Code of Civil Procedure § 1030, requiring plaintiffs to post a bond to secure any award of costs and attorney's fees.

      Plaintiffs appeared by their counsel Peter Fredman.  Defendants Realini, Robinson, Martin, and Obopay/Ultralight appeared by their counsel Lee Marshall, Alexandra Whitworth, and Mary Buchanan; and defendants Omney and ACS appeared by their counsel Christopher Karagheuzoff, and Patricia Welch.  Having read the parties'

---

[1]  The court amends the original order, filed March 3, 2017, to correct two typographical errors.  The sentence at page 1, lines 27-28, in the original order is amended to read, ". . . the court hereby GRANTS the motions to dismiss and DENIES the motion for bond as follows . . . ."  The sentence at page 24, lines 2-3, is amended to read, ". . . if defendants again move to dismiss and the court grants the motion, the court will shift costs to plaintiffs."  The March 3, 2017, order is VACATED.

United States District Court
Northern District of California

1   papers and carefully considered their arguments and the relevant legal authority, the

2   court hereby GRANTS the motions to dismiss and DENIES the motion for bond, as

3   follows and for the reasons stated at the hearing.

4                                    **BACKGROUND**

5          The complaint in this action was filed on March 25, 2015.  Plaintiffs are MH Pillars

6   Ltd., d/b/a Payza, a United Kingdom corporation, and MH Pillars Inc., a New York

7   corporation.  Cplt ¶ 6.  Plaintiffs allegedly operate "Payza," which is "an internet payment

8   business similar to Paypal."  Cplt ¶ 18.[2]  Defendants are three individuals – Realini,

9   Robinson, and Martin, all of whom allegedly reside in California; two Delaware

10  corporations – Obopay/Ultralight and Omney; and one California corporation – ACS.

11  Cplt ¶¶ 7-12.

12         Obopay/Ultralight, which was based in Silicon Valley, also operated a business

13  similar to PayPal, which was focused on mobile payments and banking, with a substantial

14  business and presence in India.  Cplt ¶ 19.  Plaintiffs assert that by 2012, most of

15  Obopay/Ultralight's customers were overseas, and its U.S. business operations

16  "consisted solely of 'renting' its purported U.S. state money transmitter license rights to

17

_____

18  [2]    MH Pillars Ltd. d/b/a Payza, and MH Pillars Inc. are allegedly separate entities.  Cplt
19  ¶ 6.  However, the complaint refers interchangeably to "plaintiff" and to "plaintiffs," not to
    any specific plaintiff.  See, e.g., Cplt ¶ 13 (both "plaintiffs" and "plaintiff"); ¶¶ 14, 15
20  ("plaintiff"); ¶ 18 ("plaintiffs"); ¶ 20 ("plaintiff"); ¶¶ 21, 23, 24, 28, 29, 31, 33, 36, 37, 39,
    40, 42-48, 50 ("plaintiffs").  The court refers generally to "plaintiffs" in this order, because
21  the complaint does not make a clear distinction.

22         The complaint appears to assert all causes of action on behalf of both plaintiffs,
    and describes Payza as "[p]laintiffs' business," but also alleges that MH Pillars Ltd. (but
23  not MH Pillars Inc.) was doing business as Payza.  Cplt ¶¶ 3, 6.  However, while Payza is
    not a party to the action, plaintiffs' opposition to the motions to dismiss refers to "Payza"
24  as, for example, the party to whom defendants owed fiduciary duties, see Opp. at 7-8; the
    party that suffered damages as a result of defendants' alleged negligence, see Opp. at 9;
25  the party that was damaged as a result of the alleged breaches of the Stock Agreement
    and the Options Agreement, see Opp. at 9; the party that was allegedly defrauded, see
26  Opp. at 11-12; the party that entered into the contracts "with . . . defendants[;]" the party
    that "was induced to enter into these contracts by fraud[;]" the party that received nothing
27  of value for the millions of dollars it paid "defendants[;]" and the party that was denied the
    benefit of the bargain by "defendants," see Opp. at 13; and the party that "states claims
28  for UCL violations," Opp. at 15.  Plaintiffs appear to be using "Payza" as a catch-all for
    either "plaintiff" or "plaintiffs," without distinguishing between the two named plaintiffs.

United States District Court
Northern District of California

non-licensed payment processing businesses through agency agreements.  Cplt ¶ 3.
Payza was allegedly one of Obopay/Ultralight's customers.  Cplt ¶ 3.

On April 1, 2012, MH Pillars Inc. entered into an "Agent Agreement" with Obopay/
Ultralight, and at that point began operating in the United States.  See Cplt ¶¶ 19-20 &
Exh. A.  Martin – Obopay's "EVP" and "Compliance Officer" – allegedly negotiated and
executed the Agent Agreement on behalf of Obopay/Ultralight.  Cplt ¶ 22; Exh. A at 11.

Under the Agent Agreement, Obopay/Ultralight agreed to provide money
transmission services to plaintiffs in the states where Obopay/Ultralight maintained
money transmitter licenses (or "MTLs").  Cplt ¶ 21.  MH Pillars Inc. agreed to pay
Obopay/Ultralight a $100,000 fee and $6,500/mo. (with increased fees after the first year)
for the rights to conduct electronic money transfers as its agent pursuant to Obopay/
Ultralight's MTLs for a three-year term.  Cplt ¶ 21.

Plaintiffs allege that shortly after MH Pillars Inc. entered into the Agent Agreement,
they learned that Obopay/Ultralight was in financial distress (which Obopay/Ultralight had
previously failed to disclose).  Cplt ¶ 23.  They assert that Obopay/Ultralight was in the
process of "selling itself or its assets," that its U.S. operations would be "abandoned"
during any resulting restructuring, and that its MTL business was facing serious
compliance problems.  Cplt ¶ 23.  They claim that Obopay/Ultralight personnel including
Martin "knew or should have known these to be the true facts at the inception of the
Agent Agreement" in April 2012 – i.e., that Obopay/Ultralight was having financial
problems and "was seeking to sell itself."  Cplt ¶ 23.

However, plaintiffs assert, it was not until May 2012 that they first became aware
that Obopay/Ultralight was for sale, when Martin approached them as potential buyers of
the company.  Cplt ¶ 24.  They contend that they were "an obvious target" as they now
relied on the Agent Agreement to operate their U.S. business.  Cplt ¶ 24.  Shortly
thereafter, they assert, Obopay/Ultralight "and/or its shareholders" began a transaction to
sell Obopay/Ultralight or its assets to an overseas buyer that intended to abandon the
U.S. operations and MTLs.  Cplt ¶ 25.  The sale was allegedly completed effective

November 11, 2012.  Cplt ¶ 27.

Plaintiffs claim that Robinson subsequently approached them with an offer to sell them the MTLs and to continue the U.S. operations.  Cplt ¶ 28.  Robinson allegedly stated that the new foreign owner of Obopay/Ultralight would transfer the MTLs to them, in exchange for an assumption of up to $500K worth of U.S. liabilities, and allegedly represented that "he could deliver the deal to plaintiffs in exchange for a brokerage fee to his new ACS entity."  Cplt ¶ 28.  After allegedly obtaining plaintiffs' agreement in principle, Robinson arranged for his attorney to put the deal together.  Cplt ¶ 29. Plaintiffs claim that Robinson's proposal was that defendant ACS would purchase Obopay/Ultralight – stripped of its technology and intellectual property – and would resell it  to plaintiffs, who would thereby acquire the MTLs by merger with what remained of the Obopay/Ultralight entity.  Cplt ¶ 31.

A series of events followed, which appear to have been caused by or related to the fact that existing Obopay/Ultralight MTLs were out of compliance with state regulators, or were "in serious jeopardy" – notably events involving negotiations concerning the attempt to bring the MTLs into compliance with the various state regulators.  Cplt ¶¶ 32-38.

On January 31, 2013, the parties executed agreements that Realini and her attorney had allegedly prepared – (a) a "Stock Purchase Agreement" ("Stock Agreement") whereby MH Pillars Ltd. purchased 9% of the stock in Obopay/Ultralight for $1.25 million, and pursuant to which Realini and Obopay/Ultralight allegedly warranted that Obopay/Ultralight had good MTLs and the power to transfer them, see Cplt Exh. B; and (b) an "Option Agreement," between MH Pillars Ltd., Obopay, and Realini, whereby MH Pillars Ltd. paid $400,000 for the option to purchase the remaining 91% of Obopay/ Ultralight for a nominal sum; and pursuant to which Realini and Obopay/Ultralight allegedly warranted that Obopay/Ultralight had good MTLs and the power to transfer them, see Cplt Exh. C.

Plaintiffs assert that the Stock Agreement was executed by Realini on behalf of Obopay/Ultralight, and that the Option Agreement was executed by Realini on behalf of

United States District Court
Northern District of California

1  herself and Obopay/Ultralight.  See Cplt ¶ 39(a), (b) & Exhs. B and C.  Plaintiffs assert

2  that "other transactional documents" included an employment agreement between

3  Realini and Obopay/Ultralight, executed by Robinson as CFO for Obopay/Ultralight; an

4  indemnity agreement between Obopay/Ultralight and Realini executed by Robinson as

5  CFO for Obopay/Ultralight; and an indemnity agreement between Obopay/Ultralight and

6  Robinson executed by Realini as CEO for Obopay/Ultralight.  Cplt ¶ 39(c).

7       Also on January 31, 2013, as part of this transaction, "plaintiffs" paid $1.65 million

8  to Obopay/Ultralight and $276,088 to ACS (which money allegedly went to Robinson and

9  Realini).  Cplt ¶¶ 40-41.  In addition, in March 2013, Obopay/Ultralight allegedly

10 requested that "plaintiffs" transfer some $4.1 million to its control for "MTL compliance

11 purposes," which plaintiffs claim they did in April 2013.  Cplt ¶¶ 44-45.

12      Plaintiffs assert that approximately two months later, in June 2013, Obopay/

13 Ultralight and Realini sent plaintiffs a letter purporting to rescind the Option Agreement

14 and terminate the Agent Agreement.  Cplt ¶ 47 & Exh. D.  As a result, plaintiffs allege,

15 they could no longer maintain their U.S. operations.  Cplt ¶ 48.  Plaintiffs allege that

16 defendants never tendered nor offered to tender the $400K consideration paid for the

17 Option Agreement, or the $4.1 million that plaintiffs paid in early 2013.  Cplt ¶¶ 49-50.

18 Plaintiffs now claim that defendants owe them $4.5 million directly, and that defendants

19 owe plaintiffs' customers some additional amount.  See, e.g., Cplt ¶¶  50-51.

20      Plaintiffs allege six causes of action in the complaint – (1) breach of fiduciary duty

21 (against Realini, Robinson, Martin, and ACS); (2) negligence (against all defendants);

22 (3) breach of contract (against Realini, and Obopay/Ultralight; (4) fraud and deceit

23 (against all defendants); (5) rescission and restitution (against all defendants); (6) infair

24 competition under Business & Professions Code § 17200 (against all defendants).

25                              **DISCUSSION**

26 A.    Motions to Dismiss

27       1.    Legal standard

28       A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6)

United States District Court
Northern District of California

1  where the pleadings fail to state a claim upon which relief can be granted.  Fed. R. Civ. P.

2  12(b)(6).  The court must "accept factual allegations in the complaint as true and construe

3  the pleadings in the light most favorable to the nonmoving party," Manzarek v. St. Paul

4  Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008), drawing all "reasonable

5  inferences" from those facts in the nonmoving party's favor, Knievel v. ESPN, 393 F.3d

6  1068, 1080 (9th Cir. 2005).

7       A complaint may be dismissed if it does not allege "enough facts to state a claim to

8  relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

9  "A claim has facial plausibility when the pleaded factual content allows the court to draw

10  the reasonable inference that the defendant is liable for the misconduct alleged."

11  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  However, "a complaint [does not] suffice if it

12  tenders naked assertions devoid of further factual enhancement." Id. (quotation marks

13  and brackets omitted).  The court need not "assume the truth of legal conclusions merely

14  because they are cast in the form of factual allegations."  W. Mining Council v. Watt, 643

15  F.2d 618, 624 (9th Cir. 1981).

16       2.     Motion by defendants Realini, Robinson, Martin, and Obopay/Ultralight

17       Defendants Realini, Robinson, Martin, and Obopay/Ultralight seek an order

18  dismissing all six causes of action alleged in the complaint.  Defendants Omney and ACS

19  filed a joinder in the motion, but provided no separate argument.

20       As an initial matter, as explained at the hearing, the court finds the complaint

21  largely incomprehensible, in part because plaintiffs fail to specify which defendant is

22  alleged to have engaged in which behavior with regard to which plaintiff.  It is not the

23  court's job or defendants' job to match up the facts with each cause of action and each

24  plaintiff and each defendant.  In addition, the court finds that each of the six causes of

25  action fails to state a claim.

26            a.     Breach of fiduciary duty

27       The elements of a cause of action for breach of fiduciary duty are (1) existence of

28  a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by

the breach.  <u>Stanley v. Richmond</u>, 35 Cal. App. 4th 1070, 1086 (1995).  There must be an

adequate showing of each of these elements in order to plead a cause of action for

breach of fiduciary duty.  See <u>Yamauchi v. Cotterman</u>, 84 F.Supp. 3d 993, 1016 (N.D.

Cal. 2015); <u>City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 68 Cal. App.

4th 445 (1998)).  Plaintiffs bring this claim against Realini, Robinson, Martin, and ACS.

Plaintiffs allege that Realini, Robinson, Martin, and ACS "owed fiduciary duties

with respect to these matters to act with the highest degree of honesty and loyalty toward

[plaintiffs] and in their best interests," on the basis that officers and controlling

shareholders owe fiduciary duties to other stockholders, that joint venture partners owe

fiduciary duties to each other, and that agents generally owe fiduciary duties to their

principals.  See Cplt ¶ 54.  Plaintiffs allege that "[d]efendants breached these fiduciary

duties" and that plaintiffs were injured and suffered damages as a result.  Cplt ¶¶ 55, 56.

The motion to dismiss the claim of breach of fiduciary duty is GRANTED.  The

complaint is impermissibly vague in its generic allegations against all "defendants," and

does not plead facts showing that any particular defendant was a fiduciary to either

plaintiff or showing a specific basis for such fiduciary relationship.  More importantly, the

complaint does not identify a fiduciary duty that was owed by any particular defendant to

any particular plaintiff, or plead facts showing the breach of any such fiduciary duty.

The dismissal is WITH LEAVE TO AMEND to allege facts sufficient to state a

plausible claim as to each of the defendants named in this cause of action – Realini,

Robinson, Martin, and ACS.  Plaintiffs must also plead particular facts showing which

defendant owed a fiduciary duty to which plaintiff, and under which theory, and must also

allege facts showing breach by a particular defendant and facts showing resulting

damage.

                b.     Negligence

The elements of a cause of action for negligence under California law are (1) duty;

(2) breach; (3) causation; and (4) damages.  <u>Wells Fargo Bank, N.A. v. Renz</u>, 795

F.Supp. 2d 898, 924-25 (N.D. Cal. 2011).  Plaintiffs bring this claim against "all

United States District Court
Northern District of California

1   defendants."

2        Plaintiffs allege that "[d]efendants owed duties of care to plaintiffs and the public at

3   large to competently maintain Obopay's MTL rights and not unlawfully rent or sell MTL

4   rights or compliance services that they had no legal authority or practical capability to

5   deliver or provide."  Cplt ¶ 59.  They allege that this "tort duty" is imposed by law on "all

6   California MTL licensees (or would-be licensees) in order to implement the fundamental

7   public policies embodied in the state regulatory scheme pertaining to MTL licensing, and

8   is independent of the parallel duties imposed on defendants under the contracts alleged

9   herein."  Cplt ¶ 59.  Additionally, plaintiffs assert, "defendants owed plaintiffs duties of

10  care under conventional <u>Biankanja</u> analysis.  Cplt ¶ 59 (citing <u>Biankanja v. Irving</u>, 49 Cal.

11  2d 647, 650 (1958)).  Plaintiffs allege further that "[d]efendants breached these duties of

12  care" and that "[p]laintiffs were harmed as a result of the breach . . . ."  Cplt ¶¶ 60-61.

13       Plaintiffs assert further that "[e]ach corporate defendant is liable for punitive

14  damages for the acts of its agents because each (a) had advance knowledge of their

15  unfitness, (b) authorized their wrongful conduct beforehand, and/or (c) ratified their

16  wrongful conduct afterwards, as shall be proven at trial.  Cplt ¶ 62.

17       The motion to dismiss the cause of action for negligence is GRANTED.  Plaintiffs

18  have not identified the existence of a legal duty – an essential element of a cause of

19  action for negligence.  Whether this prerequisite has been satisfied in a particular case is

20  a question of law to be resolved by the court.  <u>Avila v. Citrus Cmty. Coll. Dist.</u>, 38 Cal. 4th

21  148, 161 (2006).  As a general rule, persons have a duty to use due care to avoid injury

22  to others, and may be held liable if their careless conduct injures another person.  <u>See</u>

23  <u>Rowland v. Christian</u>,69 Cal. 2d 108, 113 (1968); Cal. Civ. Code § 1714.  A duty of care

24  may arise through statute, contract, the general character of the activity, or the

25  relationship between the parties.  <u>The Ratcliff Architects v. Vanir Constr. Mgmt., Inc.</u>, 88

26  Cal. App. 4th 595, 604-05 (2001) (citing <u>J'Aire Corp. v. Gregory</u>, 24 Cal. 3d 799, 803

27  (1979)).

28       Here, plaintiffs have alleged no facts showing that any defendant owed a legal

United States District Court
Northern District of California

duty of care to any plaintiff, or that any defendant breached any legal duty of care owed to any plaintiff.  Moreover, the assertion that the duty allegedly owed to "the public at large" is "independent of the parallel duties imposed on defendants" under the contracts is meaningless without any supporting facts.

In addition, the negligence claim appears to be based on the same conduct as the contract claims, and as such, would constitute an impermissible attempt to convert a breach of contract claim into a tort claim.  See Arnts Contracting Co. v. St. Paul Fire & Marine Ins. Co., 47 Cal. App. 4th 464, 479 (1996).  "A contracting party's unjustified failure or refusal to perform is a breach of contract, and cannot be transmuted into tort liability by claiming that the breach detrimentally affected the promisee's business."  Id. Conduct amounting to a breach of contract is also not tortious unless the conduct "violates an independent duty arising from principles of tort law."  Applied Equip. Corp. v. Litton Saudi Arabia, Ltd., 7 Cal. 4th 503, 514 (1994).

The dismissal is WITH LEAVE TO AMEND to allege facts supporting each element of the claim, sufficient to state a plausible claim as to each of the defendants named in this cause of action.  Plaintiffs must also plead facts showing which defendant owed a duty to which plaintiff, and must also allege facts showing a breach of that duty by a particular defendant and facts showing resulting damage.

c.  Breach of contract and breach of the implied covenant

The elements of a claim of breach of contract under California law are (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach.  Buschman v. Anesthesia Bus. Consultants LLC, 42 F.Supp.3d 1244, 1250 (N.D. Cal. 2014); CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239  (2008).  Plaintiffs assert this cause of action against Realini and Obopay/Ultralight.

In the complaint, plaintiffs allege that they entered into the Agent Agreement, the Stock Agreement, and the Option Agreement with "defendants" as shown in Exhibits A-C to the complaint.  Cplt ¶ 64.  They assert that like any contract, these agreements

United States District Court
Northern District of California

1    included an implied promise of good faith and fair dealing, not to do anything to unfairly

2    interfere with the right of any other party to receive the benefits of the contract.  Cplt ¶ 64.

3    Plaintiffs assert that "[a]s alleged above, defendants breached the implied and express

4    terms, warranties, and representations of these agreements and the implied covenants of

5    fair dealings therein."  Cplt ¶ 65.

6         The motion to dismiss the cause of action for breach of contract and breach of the

7    implied covenant is GRANTED.  This case is at heart a breach of contract case.

8    However, the breach of contract claim suffers from the same defect as exists with regard

9    to the complaint as a whole – plaintiffs MH Pillars Ltd. and MH Pillars Inc. have failed to

10   differentiate between themselves (generally referring to themselves collectively as

11   "plaintiffs" or alternatively as "Payza") and have also failed to differentiate among the

12   defendants or to plead facts showing what action any particular defendant took with

13   regard to any particular contract.

14        According to the Agreements attached as Exhibits A-C to the complaint, MH Pillars

15   Inc. and Obopay/Ultralight were the sole parties to the Agent Agreement; MH Pillars Ltd.

16   and Obopay/Ultralight were the sole parties to the Stock Agreement; and MH Pillars Ltd.,

17   Obopay/Ultralight, and Realini were the sole parties to the Option Agreement.  Thus,

18   plaintiffs must allege which Agreement forms the basis of their claim, who the parties to

19   said Agreement were, and who the claim of breach of contract is being asserted by and

20   against.  They also must allege which provisions of which Agreement were breached,

21   and how.

22        In addition, neither plaintiffs nor defendants have focused in their arguments on

23   the claim of breach of the implied covenant of good faith and fair dealing, and it is not

24   adequately addressed in the complaint.  Every contract possesses an implied covenant

25   of good faith and fair dealing in which "neither party will do anything which will injure the

26   right of the other to receive the benefits of the agreement."  Foley v. Interactive Data

27   Corp., 47 Cal. 3d 654, 684 (1988). The obligations imposed by the implied covenant are

28   not those set out in the terms of the contract, but are obligations governing the manner in

United States District Court
Northern District of California

10

1    which contractual obligations must be discharged.  See Gruenberg v. Aetna Ins. Co., 9

2    Cal. 3d 566, 574 (1973).  The scope of the implied covenant depends on the purposes

3    and express terms of the contract.  Carma Developers, Inc. v. Marathon Dev. Calif., Inc.,

4    2 Cal. 4th 342, 373 (1992).

5         To the extent that plaintiffs intend to pursue this claim, they must allege facts

6    sufficient to show that (1) the parties entered into a contract; (2) the plaintiff fulfilled its

7    obligations under the contract; (3) any conditions precedent to the defendant's

8    performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to

9    receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's

10   conduct.  Rosenfeld v. JPMorgan Chase Bank, N.A., 732 F.Supp.2d 952, 968 (N.D. Cal.

11   2010).

12        The dismissal is WITH LEAVE TO AMEND.  Plaintiffs must allege facts sufficient

13   support the elements of breach of contract and breach of the implied covenant of good

14   faith and fair dealing, as set forth above.  They must also differentiate between the two

15   plaintiffs and Payza, and must plead facts supporting the elements of the claims as to

16   each defendant and each plaintiff, and must allege which provision(s) of each Agreement

17   was breached.

18              d.       Fraud and deceit

19        Under California law, the elements of a claim of fraud are (a) misrepresentation

20   (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or

21   "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and

22   (e) resulting damage.  Lovejoy v. AT&T Corp., 92 Cal. App. 4th 85, 93 (2001).  A claim for

23   fraud based on nondisclosure further requires the plaintiff to allege facts showing that the

24   defendant had the duty to disclose the fact to the plaintiff, and that the plaintiff was

25   unaware of the undisclosed fact.  See Rodriquez v. United Airlines, Inc., 5 F.Supp. 3d

26   1131, 1136 (N.D. Cal. 2013).  Generally, there is no duty to disclose absent a fiduciary

27   relationship.  See Herremans v. BMW of N. Am., LLC, 2014 WL 5017843 at *5 (C.D. Cal.

28   Oct. 3, 2014).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In addition, in federal court, a party alleging fraud is required to "state with

2    particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The

3    complaint must include "particularized allegations of the circumstances constituting fraud,

4    including identifying the statements at issue and setting forth what is false or misleading

5    about the statement[s] and why the statements were false or misleading at the time they

6    were made."  In re Rigel Pharms., Inc. Sec. Litig., 697 F.3d 869, 876 (9th Cir. 2012); see

7    also Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106-07 (9th Cir. 2003).  Plaintiffs

8    assert the claim of fraud and deceit against all defendants.

9    In the complaint, plaintiffs allege that "[d]efendants engaged in deceit in warranting

10   and representing that they had the right and authority to deliver the state MTL rights in

11   the Agent Agreement, Stock Agreement, and Option Agreement."  Cplt ¶ 72.  They also

12   claim that "[d]efendants committed corresponding acts of deceit by their words and

13   conduct ancillary to entering into these agreements because the sole intent and purpose

14   of these transactions – and of Obopay's U.S. operations for that matter – was the

15   provision of its MTL rights to entities like plaintiffs."  Cplt ¶ 72.  In addition, plaintiffs allege

16   "[o]n information and belief," that

> [d]efendants also engaged in numerous ancillary acts of
> deceit, failing to disclose prior to the inception of the Agent
> Agreement (a) that Obopay's U.S. MTL operations were in
> serious financial distress and untenable, (b) that Obopay was
> contemplating a sale that would terminate its U.S. MTL
> operations, (c) that Obopay's MTLs were out of compliance or
> in serious jeopardy, and (d) that Obopay lacked the requisite
> liquidity, audited financial statements, technological systems,
> expertise, and other requirements of MTL compliance.

22   Cplt ¶ 73.

23   Plaintiffs assert that they "reasonably relied" on the "defendants' deceit" and that

24   they would not have entered into any agreement with Obopay in the first instance, would

25   not have pursued the MTL purchase, would not have entered into the acquisition

26   transaction, and would not have transferred the $4.1 million if the "true facts" had been

27   disclosed to them.  Cplt ¶ 74.  As with the negligence claim, plaintiffs add that  "[e]ach

28   corporate defendant is liable for punitive damages for the acts of its agents because each

United States District Court
Northern District of California

(a) had advance knowledge of their unfitness, (b) authorized their wrongful conduct beforehand, and/or (c) ratified their wrongful conduct afterwards, as shall be proven at trial."  Cplt ¶ 76.

The motion to dismiss the cause of action for fraud and deceit is GRANTED.  First, the complaint fails to allege specific facts showing the circumstances constituting fraud – the "who, what, when, where, and how" of the alleged fraud.  See Vess, 317 F.3d at 1106.  For example, with regard to the allegation that "defendants" engaged in deceit "in warranting and representing that they had the right and authority to deliver the state MTL rights in the Agent Agreement, Stock Agreement, and Option Agreement[,]" Cplt ¶ 72, plaintiffs do not plead facts showing that specific defendants "warranted" and "represented" that they had the right to deliver the MTL rights.  Indeed, plaintiffs do not cite to specific portions of any of the three Agreements, and do not explain who these warranties and representations were made to – whether to both plaintiffs, or whether only to the plaintiff that was a party to each of the agreements.

With regard to the allegation that "defendants" committed "corresponding acts of deceit by their words and conduct ancillary to entering into those agreements because the sole intent and purpose of these transactions . . . was the provision of its MTL rights to entities like plaintiffs[,]" Cplt ¶ 72, plaintiffs do not specify which defendants committed these acts, and do not plead facts showing "corresponding acts of deceit," or "conduct ancillary to entering into those agreements" – and do not explain what they mean by those phrases or what they mean by "the provision of MTL rights to entities like plaintiffs."

With regard to the allegation "on information and belief" that "defendants" also "engaged in numerous acts of deceit," including "failing to disclose" prior to the inception of the Agent Agreement that Obopay's U.S. operations were in financial difficulty, that Obopay was contemplating a sale that would terminate its U.S. MTL operations, that Obopay's MTLs were out of compliance, and that Obopay lacked the requisite liquidity, Cplt ¶ 73, plaintiffs do not plead facts showing who was deceived – the parties to the Agent Agreement were MH Pillars Inc. and Obopay – and do not specify who committed

13

1     the fraud and whether that person or entity had a duty to disclose the allegedly omitted

2     information.

3          Second, the entire claim is asserted against "all defendants," but there are no facts

4     pled showing the role of each defendant in the alleged fraud.  There is no absolute

5     requirement that where several defendants are sued in connection with an alleged

6     fraudulent scheme, the complaint must identify the false or misleading statements made

7     by each and every defendant.  Nevertheless, Rule 9(b) does not allow a complaint to

8     merely lump multiple defendants together but "require[s] plaintiffs to differentiate their

9     allegations when suing more than one defendant . . . and inform each defendant

10    separately of the allegations surrounding his alleged participation in the fraud." Swartz v.

11    KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007).  That is, "[i]n the context of a fraud suit

12    involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each]

13    defendant[ ] in the alleged fraudulent scheme.'" Id. at 765 (citation omitted).  Allegations

14    that "everyone did everything" are insufficient. Destfino v. Reiswig, 630 F.3d 952, 958

15    (9th Cir. 2011).

16         Here, to the extent that any of the factual allegations might support a claim of

17    fraud, they are not identified as such, and the cause of action itself does not plead

18    specific facts.  It should not be left to the defendants to wonder which facts plaintiffs

19    believe support their fraud claim, and it should not be left for the court to attempt to match

20    up the facts (many vaguely or imprecisely pled) from a lengthy section of the complaint to

21    the various causes of action.

22         Finally, as for the "conspiracy" allegations, the complaint does not plead the

23    elements of civil conspiracy, and the boilerplate "alter-ego" allegations in ¶¶ 14-15 are

24    insufficient to transform this deficiently-pled claim into a claim of conspiracy to commit

25    fraud.

                              e.      Rescission and restitution

26

27         Plaintiffs allege a claim of rescission and restitution, pursuant to California Civil

28    Code § 1689(b).  This claim is asserted against all defendants.  Under § 1689, a contract

United States District Court
Northern District of California

1    may be rescinded if all the parties consent.  Cal. Civ. Code § 1689(a).  Apart from that,

2    there are several legal theories under which a contract may be rescinded.  See Cal. Civ.

3    Code § 1689(b).

4         The complaint refers to three of these theories.  See Cplt ¶ 78 (citing Cal. Civ.

5    Code § 1689(b)(1), (2), (4).  Plaintiffs also assert that upon rescission or partial

6    rescission, the "aggrieved party shall be awarded complete relief, including restitution of

7    benefits, if any, conferred by him as a result of the transaction and any consequential

8    damages to which he is entitled."  Cplt ¶ 79 (citing Cal. Civ. Code § 1692).  However,

9    plaintiffs do not specify the basis of their rescission claim.  They simply assert that

10   "[p]laintiffs are entitled to rescission, restitution, and consequential damages based on

11   the facts alleged above."  Cplt ¶ 80.

12        The motion to dismiss the cause of action for rescission/restitution is GRANTED.

13   Plaintiffs have alleged no facts in this cause of action, apart from a vague reference to

14   "the facts alleged above."  Moreover, the complaint does not identify the legal theory

15   under which plaintiffs seek rescission – although plaintiffs suggest in the opposition that it

16   is § 1689(b)(1) – "mistake."  It also appears that this cause of action may be premised on

17   the fraud claim – though it is impossible to tell.

18        Apart from this, however, this cause of action must be dismissed because in

19   California, rescission is a remedy, not a cause of action.  See Camofi Master LDC v.

20   Assoc. Third Party Admins., 2016 WL 6834585 at *3 (N.D. Cal. Nov. 21, 2016); Nakash

21   v. Superior Court, 196 Cal. App. 3d 59, 70 (1987)).  Similarly, restitution is not a stand-

22   alone cause of action in California.  See, e.g., Durell v. Sharp Healthcare, 183 Cal. App.

23   4th 1350, 1370 (2010).  Restitution can be sought as a remedy in a quasi-contract cause

24   of action, see, e.g., Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015),

25   but plaintiff has not asserted a claim of quasi-contract here.

26        Both rescission and restitution may arguably be available remedies here,

27   depending on whether plaintiffs prevail and on which causes of action, but neither is a

28   stand-alone cause of action, and joining them together does not solve the problem.

15

1    Thus, the dismissal of this cause of action is WITH PREJUDICE.

2                    f.    Unfair competition

3          Business & Professions Code § 17200 ("UCL") prohibits any "business act or

4    practice" that is "unlawful, unfair, or fraudulent." Cal. Bus. & Prof. Code § 17200. The

5    UCL's purpose is to protect both consumers and competitors by promoting fair

6    competition in commercial markets for goods and services. Barquis v. Merchants

7    Collection Assn., 7 Cal. 3d 94, 110 (1972). A business act or practice must meet only

8    one of these three criteria – unlawful, unfair, or fraudulent – to constitute a violation of the

9    UCL. See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180

10   (1999).

11         Plaintiffs assert the UCL claim against "all defendants." They allege that

12   "[d]efendants engaged in unlawful, unfair, and fraudulent business acts and practices."

13   Cplt ¶ 83. They assert that "[t]he acts and practices were fraudulent for the reasons

14   stated in the claim for common law deceit[;]" that "[t]he acts and practices were unlawful

15   because defendants were essentially engaged in the business of unlawfully 'renting' and

16   'selling' MTL rights[;]" and that "[t]he acts and practices were unfair because they retained

17   the money without providing the rights or services promised." Cplt ¶ 83.

18         The motion to dismiss the UCL claim is GRANTED. There are two main problems

19   with this cause of action. First, it is not clear whether plaintiffs can state a claim, as there

20   are no facts alleging that any defendant is a competitor of plaintiff MH Pillars Ltd. or

21   plaintiff MH Pillars Inc. This case involves a dispute between commercial parties over

22   their economic relationship, which does not give rise to a claim under the UCL.

23         The UCL was not enacted to protect commercial parties who have a dispute that

24   revolves around a contractual business relationship. See Linear Tech. Corp. v. Applied

25   Materials, Ltd., 152 Cal. App. 4th 115, 135 (2007) (quoting Kasky v. Nike Inc., 27 Cal. 4th

26   939, 949 (2002)). Where a dispute is based on contracts not involving either the general

27   public or individual consumers who are parties to the contract, a corporate plaintiff may

28   not seek relief under the UCL. See id. The individual defendants in this case cannot be

United States District Court
Northern District of California

1    considered competitors.  The question is whether any of the corporate defendants is a

2    competitor, and whether that competition forms the basis of the parties' dispute.

3           As pled, plaintiffs' § 17200 claim "lacks any connection to the protection of fair

4    competition or the general public," see Sacramento E.D.M., Inc. v. Hynes Aviation Indus.,

5    Inc., 965 F.Supp. 2d 1141, 1155 (E.D. Cal. 2013), and instead centers on conduct that

6    occurred in the context of sophisticated and unique commercial transactions between the

7    parties.  For example, plaintiffs allege that under the Agent Agreement, "[p]laintiffs" paid

8    Obopay a fee for the rights to conduct electronic money transfers under Obopay's money

9    transmitter license.  Cplt ¶ 21.  Subsequently, "the parties" also entered into the Stock

10   Agreement and the Option Agreement, as well as various employment and indemnity

11   agreements.  Cplt ¶ 39.

12          The second problem is that plaintiffs have not adequately pled facts showing what

13   the alleged "unlawful," "unfair" and "fraudulent" business acts and practices were.  With

14   respect to the "unlawful" variety of unfair competition, "the UCL permits violations of other

15   laws to be treated as unfair competition that is independently actionable."  Kasky, 27 Cal.

16   4th at 949.  Virtually any law, be it federal, state, or local, can serve as a predicate for an

17   action under the UCL.  Durell, 183 Cal. App. 4th at 1361.  Here, however, plaintiffs do not

18   allege that defendants violated any law.  The basis of the "unlawful" business acts and

19   practices is plaintiffs' claim that "defendants" were "essentially engaged in the business

20   of unlawfully 'renting' and 'selling' MTL rights."  Cplt ¶ 83.  Plaintiffs have not specified

21   what law this violated, and thus, have not stated a claim for "unlawful" business acts and

22   practices.

23          With respect to the "unfair" variety of unfair competition, a plaintiff may plead that

24   defendants' conduct is "unfair" within the meaning of the several standards developed by

25   the courts.  Lozano v. AT & T Wireless Servs., Inc., 504 F.3d 718, 736 (9th Cir. 2007)

26   (requiring, in consumer cases, "unfairness be tied to a 'legislatively declared' policy" or

27   that the harm to consumers outweighs the utility of the challenged conduct); Cel-Tech.,

28   20 Cal. 4th at 186-87 (finding of unfairness must be "tethered to some legislatively

1   declared policy or proof of some actual or threatened impact on competition"); see also

2   Camacho v. Auto. Club of So. Cal., 142 Cal. App. 4th 1394, 1403 (2006); McKell v.

3   Wash. Mut., Inc., 142 Cal. App. 4th 1457, 1473 (2006).

4       Here, plaintiffs allege that the "acts and practices" were unfair because defendants

5   "retained the money without providing the rights or services promised."  Cplt ¶ 83.  That is

6   nothing more than a claim of breach of contract.  Plaintiffs have alleged no injury to

7   consumers, and no harm to competition, and thus, the complaint fails to state a claim for

8   "unfair" business acts and practices.

9       Finally, a plaintiff may challenge "fraudulent" conduct by showing that "members of

10  the public are likely to be deceived" by the challenged business acts or practices.  In re

11  Tobacco II Cases, 46 Cal. 4th 298, 312 (2009).  Here, plaintiffs allege that the acts and

12  practices were fraudulent "for the reasons stated in the claim for common law deceit."

13  Cplt ¶ 83.  Notwithstanding that courts have concluded that a claim for "fraudulent"

14  business acts and practices under the UCL is distinct from a claim of common law fraud,

15  see, e.g., Daugherty v. Am. Honda Motor Co., Inc., 144 Cal. App. 4th 824, 838 (2006),

16  plaintiffs' position is that the "acts and practices" were fraudulent for the exact same

17  reasons alleged in the fraud claim.  Under that theory, a "fraudulent" UCL claim would be

18  redundant.  Moreover, as discussed above, plaintiff has failed to plead fraud with

19  particularity.  Thus, the complaint also fails to state a claim for fraudulent business

20  practices.

21      In addition, as a whole, the complaint does not specify the conduct is the predicate

22  for the UCL claim, and it does not distinguish between each of the defendants or describe

23  what role each defendant is alleged to have played in the alleged UCL violation.  See

24  Fortaleza v. PNC Fin. Servs. Grp. Inc., 642 F. Supp. 2d 1012, 1019-20 (N.D. Cal. 2009)

25  (dismissing UCL claim that generally alleged claims against "all defendants").

26      Although the court is not confident that plaintiffs can satisfactorily allege a claim

27  under § 17200, the court dismisses this claim WITH LEAVE TO AMEND, to give plaintiffs

28  an opportunity to attempt to plead facts sufficient to state a plausible claim, in view of the

1   standards set forth above.

2        3.      Motion by Omney and ACS

3        Omney and ACS argue that the complaint does not allege facts sufficient to state a

4   claim against them.  The second (negligence), fourth (fraud and deceit), and sixth (unfair

5   competition) causes of action are asserted against both ACS and Omney, and the first

6   (breach of fiduciary duty) cause of action is asserted only against ACS.

7        Plaintiffs contend that the complaint sufficiently alleges liability against these two

8   defendants.  They argue ACS's liability derives from its alter-ego relationship with

9   Robinson, such that it is impossible to distinguish their respective roles in these matters,

10  and is also fair to hold them liable for each other's conduct.  They assert that whether a

11  party is liable under an alter ego theory is normally a question of fact (although, as

12  explained below, they do not allege facts sufficient to support this theory).

13       As for Omney, plaintiffs assert in their opposition to defendants' motions that the

14  company was incorporated "by Robinson" in October 2013.  Plaintiff states that Omney

15  was named as a defendant because "it appeared (and is alleged) to be the alter-ego

16  and/or successor of Obopay and/or ACS."   Plaintiffs add, "[f]or example," that all three

17  entities were located at the same location (the 1804 N. Shoreline Drive address), and

18  Robinson was the agent for service of process for each of them.  Further, plaintiffs

19  contend, the Obopay entity (Ultralight FS Inc.) briefly changed its name to "Omney Inc."

20  in September 2013, just before Robinson incorporated a new Omney Inc. entity (citing

21  id.).  Plaintiffs conclude that on this basis, "it is reasonable to infer that the assets of

22  Obopay – including the $1 million bank accounted [sic] – may by now be housed within

23  Omney."

24       Finally, plaintiffs contend that on June 11, 2015, Omney and ACS filed a statement

25  that disclosed that ACS was then a wholly-owned subsidiary of Omney, which was then a

26  wholly-owned subsidiary of MasterCard International Inc.  Plaintiffs are referring to the

27  "Statement of Interested Entities" filed in this court by Omney and ACS on June 11, 2015.

28  Plaintiffs appear to be saying that they did not know any of this prior to filing the

United States District Court
Northern District of California

1    complaint on March 25, 2015.

2           The motion to dismiss is GRANTED.  The complaint does not allege facts

3    sufficient to state a claim against ACS or Omney.  In particular, the complaint does not

4    allege facts sufficient to show liability under the alter ego doctrine.  "The alter ego

5    doctrine arises when a plaintiff comes into court claiming that an opposing party is using

6    the corporate form unjustly and in derogation of the plaintiff's interests."  Mesler v. Bragg

7    Mgmt. Co., 39 Cal. 3d 290, 300 (1985).  The doctrine allows "the court [to] disregard the

8    corporate entity and [to] hold the individual shareholders liable for the actions of the

9    corporation" when it would be just to do so.  Id.

10          To survive a motion to dismiss, a plaintiff asserting application of the alter ego

11   doctrine must "allege specifically both of the elements of alter ego liability, as well as

12   facts supporting each."  Sandoval v. Ali, 34 F.Supp. 3d 1031, 1040 (N.D. Cal. 2014); see

13   also Neilson v. Union Bank of Cal., N.A., 290 F.Supp. 2d 1101, 1116 (C.D. Cal. 2003)).

14          The first of these two elements is that "there must be such a unity of interest and

15   ownership between the corporation and its equitable owner that the separate

16   personalities of the corporation and the shareholder do not in reality exist."  Sonora

17   Diamond Corp. v. Super. Ct. of Tuolumne Cnty., 83 Cal. App. 4th 523, 538 (2000).  To

18   successfully plead this element, the plaintiff must also allege ownership.  SEC v. Hickey,

19   322 F.3d 1123, 1128 (9th Cir. 2003).  Other factors relevant to the first element are "the

20   commingling of funds and other assets of the entities, the holding out by one entity that it

21   is liable for the debts of the other, identical ownership of the entities, use of the same

22   offices and employees, use of one as a mere shell or conduit for the affairs of the other,

23   inadequate capitalization, disregard of corporate formalities, lack of segregation of

24   corporate records, and identical directors and officers."  Sandoval, 34 F.Supp. 3d at 1040

25   (citations omitted); see also Tomaselli v. Transamerica Ins. Co., 25 Cal. App. 4th 1269,

26   1285 n.13 (1994).

27          Here, plaintiffs have alleged no facts sufficient to show a unity of interest.  They

28   allege that Obopay, Omney, and ACS had the same business address and the same

20

agent for service of process (defendant Robinson).  They also appear to be suggesting that there was an identity of ownership.  However, each of these defendants was or is a separate corporate entity, and plaintiffs have alleged no facts relating to corporate formalities or to stock ownership, no facts relating to whether the corporations were adequately capitalized, and no facts relating to whether the assets were commingled.

Despite the many ways available to plead unity of interest, plaintiffs provide nothing more than naked assertions, on "information and belief," that

> each of the defendants and each of defendants' representatives . . . was the agent, principle [sic], servant, master, employee, employer, joint-venturer, partner, successor-in-interest, and/or co-conspirator of each other defendant and was at all said times acting in the full course and scope of said agency, service, employment, joint venture, concert of action, partnership, successorship, or conspiracy, and that each defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this complaint.

Cplt ¶ 14.

In addition, plaintiffs allege further on "information and belief" that

> each individual defendant is directly and personally liable for the acts of each other defendant notwithstanding any intervening corporate structures because each was the alter-ego of the other and all acted as a single enterprise with respect to these matters or received pecuniary benefits described herein through fraudulent transfers. In the interest of justice, and to prevent abuse of the corporate privilege, judgment must enter against each and all of them with respect to the matters alleged herein.

Cplt ¶ 15.

This sort of boilerplate pleading is insufficient to allege alter ego liability, and conclusory legal assertions are insufficient to meet the test of plausibility set out in Twombly and Iqbal.  Plaintiffs have not even recited the factors the court must consider in determining whether there is a plausible allegation of an alter ego relationship.

Plaintiffs contend that ACS's liability is shown by the allegations in ¶¶ 10-12, 14-15, 28, 31, 41, 43 of the complaint.  The court does not agree.  Paragraphs 10-11 do not mention ACS, and allege only that Robinson was the registered agent for service of

United States District Court
Northern District of California

1    process of Obopay/Ultralight and Omney – at their principal place of business at 1804 N.

2    Shorline Blvd., Suite 230, in Mountain View.  Cplt ¶¶ 10-11.  Paragraph 12 alleges that

3    Robinson was also ACS's agent for service of process, at the same address.  Cplt ¶ 12.

4    Paragraphs 14 and 15 contain the boilerplate recitations set forth above, asserting that

5    "each defendant" was the agent of each other defendant.  Cplt ¶ 12.

6           Paragraph 28 alleges that Robinson was a Silicon Valley Obopay VP, and that he

7    "approached plaintiffs" with an offer to sell them the MTLs, and that he also represented

8    that he could "deliver the deal to plaintiffs in exchange for a brokerage fee to his new

9    ACS entity."  Cplt ¶ 28.  Paragraph 31 alleges that Robinson "proposed structures where

10   ACS would purchase Obopay and resell it to plaintiffs, who would thereby acquire

11   Obopay's MTLs by merger with the residual Obopay entity," and that he and ACS would

12   perform Obopay U.S. operations (MTL compliance support) pursuant to a commercial

13   services agreement.  ACS "would receive a payment processing Agent Agreement . . .

14   with the new merged entity for the purpose of engaging in a corporate disbursement

15   business of its own."  Realini would serve as the CEO of Obopay and receive a

16   percentage ownership of ACS.  Cplt ¶ 31.

17          Paragraph 41 alleges that on January 31, 2013, Obopay "wired $276,088 to ACS"

18   and that, "[o]n information and belief," the ACS money "went to" Robinson and Realini.

19   Cplt ¶ 41.  Paragraph 43 alleges that "[d]uring this period, plaintiffs directly paid Obopay's

20   net operating expenses in anticipation of exercising their Option Agreement[;]" and that

21   "monthly invoices were sent to plaintiffs from the Obopay/ACS office" at 1804 N.

22   Shoreline Blvd., Suite 230, in Mountain View.  Among the invoices was (allegedly) one for

23   $5000/mo. for "bookkeeping/admin," which, plaintiffs allege "on information and belief,

24   went to Robinson/ACS, who had issued the invoices."  Cplt ¶ 43.

25          The second element of alter ego liability is that "there must be an inequitable result

26   if the acts in question are treated as those of the corporation alone."  Sonora, 83 Cal.

27   App. 3d at 538.  That is, plaintiffs must allege facts showing that an inequitable result will

28   occur if the corporate entities and the individuals are not treated as one, as well as "some

United States District Court
Northern District of California

1   conduct amounting to bad faith."  Leek v. Cooper, 194 Cal. App. 4th 399, 418 (2011).

2       In addition, the plaintiff must plead an inequitable result for each claim asserted in

3   the complaint.  See, e.g., Pac. Mar. Freight, Inc. v. Foster, 2010 WL 3339432 at * 7 (S.D.

4   Cal. Aug. 24, 2010).  That is, for each claim, the plaintiff must allege facts showing why

5   permitting an individual and a corporation (or two corporations) to "maintain their

6   separate corporate existenc[s]" would result in inequity.  See Payoda, Inc. v. Photon

7   Infotech, Inc., 2015 WL 4593911 at *4 (N.D. Cal. July 30, 2015)).

8       The complaint does not plead facts showing either a potential inequitable result or

9   bad faith.  While it is true that Federal Rule of Civil Procedure 8 does not require "detailed

10  factual allegations," the Supreme Court has unambiguously held that "[a] claim has facial

11  plausibility when the plaintiff pleads factual content that allows the court to draw the

12  reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556

13  U.S. at 678 (emphasis added).  Proper pleading "demands more than an unadorned . . .

14  accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the

15  elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked

16  assertions devoid of further factual enhancement."  Id. (citations, brackets, and quotation

17  marks omitted).

18      Neither the complaint as a whole nor ¶¶ 14-15 in particular contain any "factual

19  enhancements," and the allegations appear to be nothing more than a recitation of

20  various factors that courts have used in applying the alter ego doctrine.  In short, the

21  complaint is deficient because it contains primarily conclusory allegations that merely

22  recite the factors considered by courts when evaluating alter ego claims; it does not

23  specify which corporate defendant is the alter ego of which other corporate entity and/or

24  which individual defendant is the alter ego of which corporate defendant; and it does not

25  allege facts showing what each individual defendant did that would justify piercing the

26  corporate veil.

27      The motion is GRANTED, for the reasons stated above with regard to the motion

28  brought by Realini, Robinson, Martin, and Obopay/Ultralight.  In addition, the court finds

United States District Court
Northern District of California

23

United States District Court
Northern District of California

1    that the complaint alleges no basis for liability against Omney and ACS.  Although the

2    court finds it unlikely that plaintiffs will be able to state a claim against Omney and ACS,

3    the court dismisses the claims against these defendants WITH LEAVE TO AMEND.

4    However, as stated at the hearing, if plaintiffs do amend the claims against Omney and

5    ACS, and if defendants again move to dismiss and the court grants the motion, the court

6    will shift costs to plaintiffs.

7    B.      Motion for Bond

8            1.      Legal standard

9            While there is no specific provision in the Federal Rules of Civil Procedure relating

10   to security for costs, federal district courts have inherent power to require plaintiffs to post

11   security for costs.  Simulnet E. Assocs. v. Ramada Hotel Operating Co., 37 F.3d 573, 574

12   (9th Cir. 1994).  "Typically federal courts, either by rule or by case-to-case determination,

13   follow the forum state's practice with regard to security for costs, as they did prior to the

14   federal rules; this is especially common when a non-resident party is involved."  Id.

15   (quoting 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2nd § 2671).

16           Under California Code of Civil Procedure § 1030, "[w]hen the plaintiff in an action

17   . . . resides out of the state, or is a foreign corporation, the defendant may at any time

18   apply to the court by noticed motion for an order requiring the plaintiff to file an

19   undertaking to secure an award of costs and attorney's fees which may be awarded in

20   the action . . . ."  Cal. Code Civ. Pro. § 1030(a).  The statute requires the defendant to

21   show that there is a "reasonable possibility that the moving defendant will obtain

22   judgment in the action or special proceeding."  Id. § 1030(b).  "The purpose of the statute

23   is to enable a California resident sued by an out-of-state resident 'to secure costs in light

24   of the difficulty of enforcing a judgment for costs against a person who is not within the

25   court's jurisdiction.'"  Alshafie v. Lallande, 171 Cal. App. 4th 421, 428 (2009) (citation

26   omitted).

27           The "reasonable possibility" standard in § 1030(b) is relatively low.  See Circle

28   Click Media LLC v. Regus Mgmt. Grp LLC, 2015 WL 6638929 at *16 (N.D. Cal. Oct. 30,

2015) (citation omitted).  Thus, a defendant need not show that there is "no possibility" that plaintiff would win at trial, "but only that it [is] reasonably possible that the defendant will win."  Baltayan v. Estate of Getemyan, 90 Cal. App. 4th 1427, 1432 (2001). However, § 1030 should not be read so broadly "as to require every out-of-state litigant who brings a non-frivolous suit in California to post a bond simply because there is a reasonable chance the defendant may prevail."  Circle Click Media, 2015 WL 6638929 at *16 (citation omitted).

Federal courts in California have held that in applying § 1030, a court must consider "'(i) the degree of probability/ improbability of success on the merits, and the background and purpose of the suit; (ii) the reasonable extent of the security to be posted, if any, viewed from the defendant's perspective; and (iii) the reasonable extent of the security to be posted, if any, viewed from the nondomiciliary plaintiff's perspective.'" Simulnet, 37 F.3d at 573 (citations omitted); see also Gabriel Techs. Corp. v. Qualcomm Inc., 2010 WL 3718848 (S.D. Cal. Sept. 20, 2010).

2.      Defendants' motion

Defendants argue that the plaintiffs "must" be required to post a bond because they are foreign corporations, and defendants are "likely" to obtain judgment in their favor.  Defendants make three main arguments – that plaintiffs are not incorporated in California, that there is a "reasonable possibility" that defendants will obtain judgment in this action, and that defendants have incurred (and will continue to incur) significant costs and fees that plaintiffs may not be able to pay.

The motion is DENIED.  Defendants have not met their burden of showing that they are likely to obtain judgment in the six causes of action, or that the extent of the security they request to be posted is reasonable, from any perspective.  Moreover, they have shown no basis for at least two of the three individual defendants to seek to recover fees and costs.

The only true statutory claim alleged is the sixth cause of action under § 17200. The UCL does not provide for attorney's fees, and relief is generally limited to injunctive

relief and restitution.  See Cel-Tech, 20 Cal. 4th at 179.  The UCL contains no provision for recovery of fees and costs by a prevailing defendant, although a prevailing defendant may recover for work done on claims other than a UCL claim if there are other claims asserted which authorize attorney's fees awards.  See Davis v. Ford Motor Credit Co., 179 Cal. App. 4th 581, 600 (2009).  However, there is no other statutory claim with an attorney's fees provision pled in the complaint.

While fees might be authorized pursuant to a contract, the breach of contract claim is asserted only against Realini and Ultralight/Obopay, in connection with the Option Agreement.  Thus, at a minimum, Robinson and Martin would have no basis upon which to seek attorney's fees.

## CONCLUSION

In accordance with the foregoing, the motions to dismiss are GRANTED, and the motion for a bond is DENIED.

Any amended complaint shall be filed no later than March 30, 2017.  No new causes of action or parties may be added to the amended complaint unless plaintiffs first obtain leave of court.

**IT IS SO ORDERED.**

Dated:  March 8, 2017

_____
PHYLLIS J. HAMILTON
United States District Judge