UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MH PILLARS LTD, et al.,

    Plaintiffs,

v.

CAROL REALINI, et al.,

    Defendants.

Case No. 15-cv-01383-PJH

**ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFFS' MOTION TO DISMISS RICO COUNTERCLAIM**

Re: Dkt. No. 118

Plaintiffs' motion to dismiss defendants' third counterclaim for violation of the Racketeer Influenced and Corrupt Organizations Act came on for hearing before this court on January 24, 2018. Plaintiffs appeared through their counsel, Peter Fredman. Defendants appeared through their counsel, Lee Marshall and Mary Beth Buchanan. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

This case concerns a failed commercial relationship between defendant Obopay and related parties and plaintiff MH Pillars and related parties, including MHP-UK (a UK corporation that operates an on-line payment service provider called "Payza" (FAC ¶¶ 1, 12)) and MHP-USA (a New York corporation that is a wholly-owned subsidiary of MHP-UK (FAC ¶¶ 2, 18)). On March 28, 2012, the parties entered into an agreement whereby Obopay designated MHP-USA as its agent for the purpose of engaging in U.S. money transmissions in exchange for certain fees payable to Obopay. See Countercl. ¶ 15, Dkt. 114; Ans. ¶ 19, Dkt. 114. Obopay possessed certain money transmitter licenses

("MTLs") that are required to perform certain functions by the issuing states. Obopay attached a chart to the parties' agreement representing its MTL rights for certain states. Dkt. 74-2 at 12–13. California and New York are notated as "Application filed – in Process." Id. On or about November 11, 2012, Obopay was sold to OBP Inc. Countercl. ¶ 23.

The parties entered a series of arrangements after Obopay was purchased whereby MHP would have the option to retain the MTLs. In late January 2013, Carol Realini, who had previously been CEO of Obopay, acquired 100% ownership of Obopay. Countercl. ¶¶ 8, 24. As a result of the transaction, Realini acquired Obopay from OBP, and MHP-UK acquired a 9% interest in Obopay from her, with the option to acquire the remainder of the company. Countercl. ¶¶ 25–26.

Obopay later hired Deloitte Financial Advisory Services LLC to conduct a background audit on MHP-USA, MHP-UK, their owner Firoz Patel, his brother Ferhan Patel, and some of MHP-USA's customers. Countercl. ¶ 29. That audit allegedly reported that MHP-USA was processing payments for certain customers in violation of the parties' agreement. Countercl. ¶ 34. Obopay alleges that it confirmed that MHP-USA was using the Obopay platform to process transactions for at least two businesses that were prohibited under the agreement. Countercl. ¶¶ 34, 37–39. Defendants also allege that they learned MHP-USA was transmitting money in states where Obopay had no license, including New York and California. Countercl. ¶¶ 41, 43.

On June 3, 2013, defendants sent plaintiffs a letter suspending the parties' March 28 contract; defendants terminated that contract 30 days later. Countercl. ¶ 45. Defendants contend that they were forced to terminate the contract because plaintiffs' money transmission customers were engaged in illegal activities (rendering the transmissions unlawful under 18 U.S.C. §§ 1956–57) and because MHP-USA was conducting money transmissions in jurisdictions where Obopay did not hold a valid MTL (rendering the transmissions unlawful under 18 U.S.C. § 1960). Countercl. ¶¶ 40–45, 70–76.

On March 25, 2015, plaintiffs sued for, among other things, fraud in the inducement of the contract and breach of contract. Dkt. 1. Defendants moved to dismiss certain claims, and the court granted dismissal of some of plaintiffs' claims and denied dismissal of others. Dkts. 81, 109.

Following the court's order on defendants' motion to dismiss, defendants filed counterclaims alleging, among other things, violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 ("RICO"). Dkt. 114. Defendants seek RICO civil remedies based on allegations that MHP-USA processed unlawful money transmissions in violation of the law and the parties' contract because plaintiffs' customers were engaged in illegal activity and because transmissions occurred in states where Obopay did not hold a valid MTL. Defendants allege that this constituted racketeering activity by a RICO enterprise, and that defendants were injured in their business and property as a result because they were forced to terminate the parties' contract, surrender certain MTLs, and bear costs resulting from plaintiffs' conduct.

On November 9, 2017, plaintiffs filed the instant motion to dismiss defendants' RICO counterclaims. Mot., Dkt. 118.

**DISCUSSION**

**A.  Legal Standard**

  **1.  Motion to Dismiss Under FRCP 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court accepts as true the factual allegations in the complaint, legally conclusory statements not supported by actual factual allegations need not be accepted.

3

Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

### 2. Pleading Standard Under FRCP 9(b)

In actions alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Falsity must be pled with specificity, including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted); see also Sanford v. MemberWorks, Inc., 625 F.3d 550, 558 (9th Cir. 2010). In addition, the plaintiff must do more than simply allege the neutral facts necessary to identify the transaction; he must also explain why the disputed representation was untrue or misleading at the time it was made. Yourish v. Calif. Amplifier, 191 F.3d 983, 992–93 (9th Cir. 1999).

**B. Analysis**

### 1. Statute of Limitations

Civil RICO actions have a four-year statute of limitations. Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156 (1987). The limitations period "begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." Grimmett v. Brown, 75 F.3d 506, 510–11 (9th Cir. 1996) (quoting Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp., 828 F.2d 211, 220 (4th Cir. 1987)). "The

1 plaintiff need not discover that the injury is part of a 'pattern of racketeering' for the period
2 to begin to run." Id. (citation omitted). However, "a new cause of action accrues for each
3 new and independent injury, even if the RICO violation causing the injury happened more
4 than four years before." Id. (citation omitted).

The parties agree that the defendants' RICO claims accrued in June 2013. Mot. at 8; Opp. at 6, Dkt. 122. Without any tolling, the four-year statute of limitations would have run in June 2017. Defendants argue that the statute of limitations has been tolled for two reasons: the filing of the complaint and the court's order on the United States' Motion to Intervene and Stay.

First, although the Ninth Circuit has not opined on the issue, this court is persuaded by the weight of authority that the filing of a complaint tolls the statute of limitations for compulsory counterclaims, which relate back to the date the initial complaint was filed. Orange Cty. Health Care Agency v. Dodge, 793 F. Supp. 2d 1121, 1129 (C.D. Cal. 2011) ("Plaintiff's Complaint tolled the statute of limitations."); Yates v. Washoe Cty. Sch. Dist., No. 07-cv-00200-LRH-RJJ, 2007 WL 3256576, at *2 (D. Nev. Oct. 31, 2007) ("The Ninth Circuit has not addressed the issue of whether the filing of an action tolls the running of the statute of limitations with respect to a compulsory counterclaim. However, the majority of courts to address the issue have concluded that a plaintiff's institution of a suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim.") (citations omitted); see also Oracle Am., Inc. v. Terix Computer Co., Inc., No. 13-cv-03385-PSG, 2014 WL 5847532, at *6 (N.D. Cal. Nov. 7, 2014) ("The institution of a plaintiff's suit suspends the running of limitations on a compulsory counterclaim while the suit is pending.") (Grewal, Mag. J.) (internal quotation marks omitted); 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1419 (3d ed. 1998) ("Although there is some conflict on the subject, the majority view appears to be that the institution of plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim.").

"To be compulsory, a counterclaim must 'arise[ ] out of the transaction or

occurrence that is the subject matter of the opposing party's claim.'" Mattel, Inc v. MGA Entm't, Inc., 705 F.3d 1108, 1110 (9th Cir. 2013) (citing Fed. R. Civ. P. 13(a)(1)(A)). The Ninth Circuit applies "the logical relationship test for compulsory counterclaims." Id. (citation omitted). "A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant. . . . What matters is not the legal theory but the *facts.*" Id. (quoting In re Pegasus Gold Corp., 394 F.3d 1189, 1196 (9th Cir. 2005)).

Plaintiffs have surviving claims for breach of the option contract and the associated implied covenant, as well as a claim of fraud and deceit. Dkt. 109 at 39. Defendants' affirmative defenses include plaintiffs' prior breach, fraudulent inducement, impossibility of performance due to seizure of funds from the United States government "[d]ue to Plaintiffs' misconduct and unlawful transmission of funds as described below in Defendants' Counterclaims," unclean hands, and fault of others. Ans. at 12–13. Those claims and defenses are inexorably intertwined with defendants' RICO counterclaims because each concerns the same underlying facts and transactions: plaintiffs' actions that allegedly both breached the contracts and constituted predicate RICO acts.

Therefore, defendants' compulsory RICO counterclaims relate back to the time plaintiffs filed their complaint to determine whether they were filed within the statute of limitations. Plaintiffs filed their complaint on March 25, 2015, less than one year and ten months after June 1, 2013.[1] Because defendants' compulsory counterclaims relate back to March 25, 2015, and because that date is less than four years from the date the claims accrued, the court finds that defendants' RICO counterclaims are not barred by the statute of limitations.

**2.      18 U.S.C. § 1962(c)**

---

[1] The court assumes without deciding that the claims accrued on June 1, 2013, as the parties agree they accrued that month.

6

A violation of 18 U.S.C. § 1962(c) requires (1) conduct (2) of an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity. 18 U.S.C. § 1962(c). In addition, the conduct must be (5) the proximate cause of harm to the claimant's business or property. Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496–97 (1985). To plead the existence of an enterprise under the second element, defendants must allege that the enterprise has (i) a common purpose, (ii) a structure or organization, and (iii) longevity necessary to accomplish the purpose. Eclectic Properties E., LLC v. Marcus & Millichap Co., 751 F.3d 990, 997 (9th Cir. 2014) (citing Boyle v. United States, 556 U.S. 938, 946 (2009)). "Racketeering activity, the fourth element, requires predicate acts," which in this case are alleged to be transmitting money without a license in violation of 18 U.S.C. § 1960 (Countercl. ¶ 73) and money laundering in violation of 18 U.S.C. §§ 1956–57 (Countercl. ¶¶ 70–72). Eclectic Properties, 751 F.3d at 997.

Plaintiffs challenge the sufficiency of defendants' pleading with respect to (a) establishing a RICO enterprise; (b) alleging predicate acts with the particularity required under Fed. R. Civ. P. 9(b); and (c) establishing that the enterprise's racketeering activity caused harm to defendants' business or property.

### a. An Enterprise Affecting Interstate Commerce

First, plaintiffs argue there is no enterprise at all because there are not distinct actors; they argue RICO defendants cannot be a corporation and its wholly-owned subsidiary engaged in an "enterprise" with their officers, employees, and agents. Mot. at 13. Second, plaintiffs argue that defendants do not adequately allege the structure or other necessary elements of the RICO enterprise. Id. at 13–14.

First, "to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001). When reviewing whether entities are distinct, "the only important thing is that the enterprise be either formally (as when there is a corporation) or

7

practically (as when there are other people beside the proprietor working in the organization) separable from the individual." Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1534 (9th Cir. 1992) (citation omitted) ("if the enterprise was a *corporation,* the fact that there was but one stockholder would not shield that individual from suit"). There are sufficiently-distinct parties in a RICO enterprise where "the RICO 'person' is part of the 'enterprise' whole," including in part "because 'a corporate officer can be a person distinct from the corporate enterprise[.]'" United States v. Mongol Nation, 693 F. App'x 637, 638 (9th Cir. 2017) (quoting Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353, 362 (9th Cir. 2005)); accord Cedric Kushner Promotions, Ltd., 533 U.S. at 164–65 ("A corporate employee who conducts the corporation's affairs through an unlawful RICO 'pattern ... of activity,' § 1962(c), uses that corporation as a 'vehicle' whether he is, or is not, its sole owner."); Watts v. Allstate Indem. Co., No. CIVS081877LKK/GGH, 2009 WL 1905047, at *6 (E.D. Cal. July 1, 2009) ("A separately-incorporated subsidiary satisfies the tests articulated by both King and Sever.*"*). Plaintiffs' argument that a RICO enterprise cannot be formed by parent and subsidiary corporations is not in accordance with the law of this Circuit.

Second, to adequately allege the existence of an enterprise, defendants must plead that the enterprise has (i) a common purpose, (ii) a structure or organization, and (iii) longevity necessary to accomplish the purpose. Eclectic Properties, 751 F.3d at 997 (citing Boyle*,* 556 at 946). A party may allege an "association-in-fact" enterprise, where: "(1) There [was] an ongoing organization with some sort of framework, formal or informal, for carrying out its objectives; and (2) the various members and associates of the association function[ed] as a continuing unit to achieve a common purpose." Boyle, 556 U.S. at 942 (citations and internal quotation marks omitted). Boyle also approved of instructions to a jury that it could "find an enterprise where an association of individuals, without structural hierarchy, form[ed] solely for the purpose of carrying out a pattern of racketeering acts' and that '[c]ommon sense suggests that the existence of an association-in-fact is oftentimes more readily proven by what is *[sic]* does, rather than by

8

abstract analysis of its structure.'" Id.[2]

Defendants allege that the RICO enterprise consists of the "Payza Enterprise" made up of "Ferhan and Firoz Patel, both MHP entities, and . . . the MHP entities' parent company, Solitaire Holdings, and several partner entities, including Alert Pay, E-Commerce World Wide Group Ltd. d/b/a EgoPay, Ceptum Limited, Fiberty Limited, and Hamervate Limited." Countercl. ¶ 67. Defendants have alleged with specificity that core members of that larger enterprise—Ferhan Patel, Firoz Patel, MHP-UK, and MHP-USA—functioned as a stable unit to achieve their common purpose: facilitating illegal financial transactions. E.g., Countercl. ¶¶ 3–4, 18, 28–43, 67–73. Therefore, the court finds that defendants have adequately pled an association-in-fact enterprise.

### b. Racketeering Activity/Predicate Acts

Plaintiffs argue that the pleading requirements of Fed. R. Civ. P. 9(b) apply to defendants' allegations, and that defendants have not met those requirements. Mot. at 12–13. Defendants identify two predicate acts: transmitting money without a license in violation of 18 U.S.C. § 1960 (Countercl. ¶¶ 41, 73) and money laundering in violation of 18 U.S.C. §§ 1956–57 (Countercl. ¶¶ 35–39, 70–72).

Plaintiffs argue that defendants' § 1956 claim implicates Rule 9(b)'s heightened pleading standard; their arguments and cited authority do not address the pleading standard for defendants' § 1960 unlicensed transmission claim. Mot. at 12. The court looks to whether the alleged predicate acts are grounded in fraud to determine the appropriate pleading standard. E.g., In re Toyota Motor Corp., 785 F. Supp. 2d at 918 ("These predicate acts are grounded in fraud. Accordingly, the pleading requirements of

---

[2] In the same opinion, the Supreme Court described structural features that are not required of a RICO organization: "an association-in-fact enterprise is simply a continuing unit that functions with a common purpose. Such a group need not have a hierarchical structure or a 'chain of command'; decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies." Boyle, 556 U.S. at 948.

9

Rule 9(b) apply to the alleged predicate acts."). 18 U.S.C. § 1960 addresses "knowing conduct," but it does not require knowledge of any state's licensing requirement or knowledge of any licensing violation. 18 U.S.C. § 1960. The statute "requires the affirmative action of knowingly operating a money transmitting business" but has no "requirement that a money transmitting operator know that what he is doing is prohibited by state law." United States v. Dimitrov, 546 F.3d 409, 414 (7th Cir. 2008); accord United States v. Talebnejad, 460 F.3d 563, 568 (4th Cir. 2006). Accordingly, defendants' § 1960 pleading must only satisfy Rule 8's pleading requirement because the statute does not sound in fraud.

Defendants allege that plaintiffs knowingly transferred money in states where they were not licensed during 2012 and 2013 in violation of § 1960, and they allege such transmissions specifically New York, California, and Pennsylvania. Countercl. ¶ 73. Given defendants' allegation that plaintiffs transferred money in particular states during a two-year time period and that plaintiffs did not have licenses to transfer money in those states, the counterclaim proffers sufficient facts to state a claim for relief that is plausible on its face. Because defendants' unlicensed transmission allegations constitute adequately-pled predicate acts under Rule 8, the court need not address defendants' money laundering allegations.

### c. Proximate Cause of Harm to Business or Property

First, plaintiffs argue that defendants' "RICO counterclaim fails substantively because it does not adequately plead that the Defendants suffered concrete financial injury as a direct result of the allegedly unlawful money transmissions that form the basis of the racketeering allegation." Mot. at 8. They argue that RICO requires a heightened causation standard where defendants must plead "direct" causation, and that defendants fail to meet that standard. Id. at 2–3.

Second, plaintiffs argue that defendants do not plead cognizable harm, because "claimants must show that they suffered a concrete financial loss as opposed to merely an injury to a valuable intangible property interest." Id. at 9.

### i. Proximate Cause

In the Ninth Circuit, a claimant must allege that the RICO predicate acts are the proximate—and not just foreseeable—causes of harm. Couch v. Cate, 379 F. App'x 560, 566 (9th Cir. 2010) ("Hemi Group definitively foreclosed RICO liability for consequences that are only foreseeable without some direct relationship.") (citing Hemi Grp., LLC v. City of New York, N.Y., 559 U.S. 1, 12 (2010) (plurality) (rejecting a proximate cause analysis that would "turn on foreseeability, rather than on the existence of a sufficiently 'direct relationship' between the fraud and the harm")).

Courts consider three factors when determining whether an injury is "too remote" to allow recovery under RICO: "(1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries." Ass'n of Wash. Pub. Hosp. Districts v. Philip Morris Inc., 241 F.3d 696, 701 (9th Cir. 2001); accord Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 458–59, 465–69 (2006) (applying the three factors); see also Hemi Grp., LLC, 559 U.S. at 11–12 (2010) (plurality) (considering "whether better situated plaintiffs would have an incentive to sue").

Defendants identify two predicate acts: transmitting money without a license in violation of 18 U.S.C. § 1960 (Countercl. ¶ 73) and money laundering in violation of 18 U.S.C. §§ 1956–57 (Countercl. ¶¶ 70–72). Defendants allege three types of harm: (1) plaintiffs' activities required Obopay to terminate its contracts with plaintiffs and lose its prospective benefits from those agreements; (2) lost MTLs; and (3) incurred fees and expenses responding to plaintiffs' activities.

Regarding the first factor—whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general—it is unclear whether plaintiffs' transmission of money without a license has more direct victims who are incentivized to bring complaints. The states whose laws

were violated may bring claims, and the parties whose money was illegally handled might bring claims if losses flowed to them, but it is unclear whether such losses have in fact flowed to them. It seems just as likely that those whose money was transmitted illegally are happy about the scheme and profited from it.

Regarding the second factor—whether it will be difficult to ascertain the amount of damages attributable to the wrongful conduct—the court does not anticipate that defendants' claimed damages attributable specifically to plaintiffs' wrongful conduct will be more challenging to ascertain than damages calculations the court routinely encounters. Defendants allege damages based on contracts they terminated due to plaintiffs' conduct. They will be required to demonstrate the measure of those damages with some particularity. Even assuming as plaintiffs argue that the claim would require parsing the benefits defendants would have received from plaintiffs' legal transactions from their illegal transactions, adjudicating that measure of damages is comfortably within the competence of the courts.

Regarding the third factor—whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries—there is little risk of multiple recoveries or complicated rules apportioning damages. Although plaintiffs may have caused other types of damages to those whose money they transmitted, the amount of prospective financial gain defendants lost from plaintiffs' contractual breach is unique to defendants.

Defendants allege that plaintiffs' transmission of money without a license in violation of 18 U.S.C. § 1960 materially breached the parties' contracts, subjecting defendants to unacceptable risk, uncertainty, and ultimately an inability to benefit from the bargained-for business relations that would have flown from the contract. Countercl. ¶¶ 6, 41–45; Ans. at 12 ¶ 2. Considering the direct relationship between the alleged predicate acts and that harm, and considering the three factors addressed above, the court concludes that defendants allege sufficiently-direct harm in the form of breached contract damages resulting from plaintiffs' alleged predicate act of transmitting money

12

without a license in violation of 18 U.S.C. § 1960.

### ii. Cognizable Harm

"To demonstrate injury for RICO purposes, plaintiffs must show proof of concrete financial loss, and not mere injury to a valuable intangible property interest." Chaset v. Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1086–87 (9th Cir. 2002).

Defendants' loss of the benefits of their agreements with plaintiffs due to plaintiffs' breach of contract is cognizable harm as a loss of prospective financial gain. Diaz v. Gates, 420 F.3d 897, 899–900 (9th Cir. 2005) (concrete financial loss where "harms he alleges amount to intentional interference with contract and interference with prospective business relations" and the claimed financial loss was that "[h]e could not fulfill his employment contract or pursue valuable employment opportunities"); Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1168–69 & n.4 (9th Cir. 2002) (cognizable interest in the "legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate statutes.").

### 3. 18 U.S.C. § 1962(b)

Plaintiffs argue that defendants' 18 U.S.C. § 1962(b) claim fails because defendants plead the requirement "in utterly conclusory fashion" and do not adequately plead the racketeering "*through which*" plaintiffs "acquired or maintained" interest or control in the enterprise, "or how that activity might have injured them." Mot. at 14. Defendants point to paragraph 75 of their counterclaim, which alleges that "MHP-UK has, through a pattern of racketeering activity, acquired or maintained, directly or indirectly, an interest in or control of the Payza Enterprise and MHP-USA[.]" Opp. at 15 (citing Countercl. ¶ 75).

"To state a claim under this subsection, a plaintiff must allege '1) the defendant's activity led to its control or acquisition over a RICO enterprise, and 2) an injury to plaintiff resulting from defendant's control or acquisition of a RICO enterprise.'" In re Toyota Motor Corp., 785 F. Supp. 2d at 920 (quoting Wagh v. Metris Direct, Inc., 363 F.3d 821, 830 (9th Cir. 2003), overruled on other grounds by Odom v. Microsoft Corp., 486 F.3d

13

541, 551 (9th Cir. 2007) (en banc)). It requires defendants "to allege that the [plaintiffs] acquired or maintained an interest in or control of the enterprise through their predicate acts." Id. at 921.

"To adequately allege proximate causation under § 1962(b), a plaintiff must allege an 'injury from the defendant's acquisition or control of an interest in a RICO enterprise' separate from an injury flowing from the racketeering activity itself." In re Toyota Motor Corp., 785 F. Supp. 2d at 921 (quoting U.S. Concord, Inc. v. Harris Graphics Corp., 757 F. Supp. 1053, 1056 (N.D. Cal. 1991)); accord Cornerstone Staffing Sols., Inc. v. James, No. 12-cv-01527-RS, 2013 WL 12124430, at *7 (N.D. Cal. Oct. 21, 2013). The claim should be dismissed where the defendants "have not alleged any injury other than the alleged economic loss flowing from the racketeering activity." In re Toyota Motor Corp., 785 F. Supp. 2d at 921. There must be an alleged injury "separate and distinct from the injury flowing from the predicate acts." Id.

Defendants argue that they have made this allegation properly "[a]t least with respect to MHP-UK, [because] the Counterclaim clearly states a claim for violation of subsection 1962(b)." Opp. at 15 (citing Countercl. ¶ 75). Defendants' § 1962(b) claim is supported by that single legally-conclusory statement. Defendants plead the statutory language of culpability with respect to MHP-UK (although not with respect to MHP-USA), but they do not plead with respect to any entity how its racketeering activity helped it to acquire or maintain any interest in or control of the enterprise. Other than the conclusory pleading, it is unclear from the facts alleged how defendants assert MHP-UK violated § 1962(b) (much less MHP-USA), or how either's activity led to its control or acquisition over a RICO enterprise. Defendants' pleading therefore does not allege sufficient facts to support a cognizable legal theory for violation of 18 U.S.C. § 1962(b) under Fed. R. Civ. P. 8(a)(2).

Defendants face a larger problem with respect to alleging harm and causation tied specifically to the conduct subject to § 1962(b). Defendants do not allege injury from plaintiffs' § 1962(b) violations that is distinct from the injury caused by plaintiffs'

14

racketeering activities that defendants seek recovery for under § 1962(c). But defendants must allege injury "separate and distinct from the injury flowing from the predicate acts." In re Toyota Motor Corp., 785 F. Supp. 2d at 921.

### 4. 18 U.S.C. § 1962(d)

The parties agree that defendants' 18 U.S.C. § 1962(d) claim requires adequate pleading of an underlying 18 U.S.C. § 1962(c) claim. Mot. at 14; Opp. at 15. Because defendants have adequately pled a claim under 18 U.S.C. § 1962(c) as described above, and because they allege that plaintiffs conspired to violate 18 U.S.C. § 1962(c), they have adequately pled a claim under 18 U.S.C. § 1962(d). E.g., Countercl. ¶¶ 3–5, 16-18, 30, 35–40, 75.

### 4. Judicial Notice

Plaintiffs ask the court to take judicial notice of certain declarations previously filed by defendants in this case as well as a publicly available Consent Order entered between a West Virginia regulatory body and an entity related to Obopay. Mot. at 3 n.1; Dkt. 119. Those documents tend to evidence that defendants had trouble maintaining certain MTLs regardless of plaintiffs' activities. As the court's decision does not depend upon the reasons defendants lost MTLs, the request is DENIED.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to dismiss defendants' counterclaims is DENIED with respect to counterclaims brought under 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d). The motion is GRANTED WITH LEAVE TO AMEND with respect to defendants' counterclaim under 18 U.S.C. § 1962(b). Any amendment shall be filed no later than 21 days after the date of this order. No additional parties or claims may be added to the amended counterclaims without leave of court or stipulation of plaintiffs.

**IT IS SO ORDERED.**

Dated: March 7, 2018

_____
PHYLLIS J. HAMILTON
United States District Judge